ALBERTA GAS CHEMICALS, INC., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 79-8-01295.

United States Customs Court.

Sept. 22, 1980.

Freeman, Meade, Wasserman & Schneider, New York City (Bernard J. Babb, Washington, D. C., of counsel), for plaintiff.

Alice Daniel, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, John J. Mahon and Glenn E. Harris, Washington, D. C., trial attys., for defendant.

*Memorandum Opinion and Order on Plaintiff's Motion Brought on by an Order to Show Cause Why Sale of General Order Merchandise Should Not Be Enjoined*

NEWMAN, Judge:

We are faced again with the oft–litigated question of the Customs Court's equitable powers. In that connection, see my recent memorandum and orders in *Industrial Fasteners Group, American Importers Association v. United States, et al.*, 85 Cust.Ct. ——, C.R.D. 80–8, 495 F.Supp. 911 (1980), wherein this Court for the first time issued a temporary restraining order and preliminary injunction in a matter of novel impression under section 516A(c)(2) of the Tariff Act of 1930, as added by the Trade Agree-

ments Act of 1979 (Pub.L. 96–39, 93 Stat. 144, enacted July 26, 1979).[1]

■ The issue now presented by plaintiff's motion, brought on by an order to show cause, is whether the Customs Court is empowered to grant injunctive relief pursuant to 28 U.S.C. § 1651(a), commonly known as the "All Writs Act". That Act provides:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

I have concluded that the foregoing statute is applicable to the Customs Court and that injunctive relief may be granted under the facts and circumstances of this case.

Pursuant to plaintiff's motion, and after a conference attended by counsel for the parties, this Court on August 13, 1980 issued an order to show cause returnable on August 20, 1980 "why an order should not be entered directing the Regional Commissioner at the Port of New York and all other officials and agents of the United States to maintain one shipment, consisting of 25 × 55 gallon drums of methyl alcohol imported by the plaintiff from Canada on August 14, 1979 and now being stored in the Mercantile Warehouse in Newark, New Jersey under General Order No. 110–79, in its present status and unsold until 30 days after the decision of this Court on the merits has become final".

The order to show cause further provides: "pending the hearing and determination of this motion and the entry of an order thereon, that all proceedings by the defendant, and any of its officers and agents in connection with the sale or other disposal of the merchandise or its removal from its present location, be, and is, hereby stayed by this Court".

The above order to show cause, which was issued on the eve of the expiration of the one year general order period, was signed in the context of the following undisputed factual background.

On March 23, 1979 the Treasury Department ("Treasury") determined that methyl alcohol from Canada is being, or is likely to be, sold at less than fair value ("LTFV") within the meaning of section 201(a) of the Antidumping Act of 1921, as amended (19 U.S.C. § 160(a)). That determination was published in the *Federal Register* on March 30, 1979 (44 FR 19090).

On June 29, 1979 the United States International Trade Commission determined, in Investigation No. AA1921–202, that an industry in the United States is likely to be injured by reason of the importation of methyl alcohol from Canada which Treasury had determined is being, or is likely to be, sold at LTFV. The Commission's determination was published on July 12, 1979 (44 FR 40734).

On July 23, 1979 Treasury issued a Finding of Dumping respecting methyl alcohol from Canada (T.D. 79–210), which Finding was published in the *Federal Register* on July 27, 1979 (44 FR 44154).

The subject merchandise was exported from Canada on August 13, 1979. Entry documents (Customs Form 7501)[2] and a check for estimated duties were presented by plaintiff to the appropriate customs officer at the port of New York on August 15, 1979. However, the entry was rejected by Customs for the reason that the importer refused to proffer an antidumping bond (Customs Form 7591) in accordance with 19 U.S.C. § 167 and 19 C.F.R. § 153.50.

Further, on August 15, 1979, upon exclusion of the merchandise from entry, the merchandise was assigned General Order No. 110–79 and was placed in the Mercantile Warehouse, 1300 Newark Turnpike, Newark, New Jersey. The Court has been advised by counsel that the merchandise presently remains stored in that warehouse.

---

1. This provision empowers the Customs Court to enjoin the liquidation of entries in the case of a determination described in paragraph (2) of subsection (a).

2. Consumption entry No. 79–638078–8.

On August 20, 1979, following the denial of its administrative protest, plaintiff commenced the present action contesting the Regional Commissioner's decision to exclude the merchandise from entry and his refusal to deliver the subject merchandise without the filing of an antidumping bond. The gravamen of plaintiff's action is that the Secretary's Finding of Dumping is illegal, null, and void; and that therefore the Regional Commissioner erred in demanding the posting of an antidumping bond, and in excluding the merchandise from entry and delivery to plaintiff in the absence of such bond. Plaintiff seeks an order directing the Regional Commissioner to accept plaintiff's entry and deliver the merchandise to plaintiff without filing an antidumping bond.

Defendant's motion to dismiss the action or alternatively for summary judgment was denied by this Court on January 17, 1980. *Alberta Gas Chemicals, Inc. v. United States,* 84 Cust.Ct. ——, C.R.D. 80–1, 483 F.Supp. 303 (1980). There, it was determined that pursuant to 28 U.S.C. § 1582(a)(4) this Court has jurisdiction to determine the legality of the exclusion of plaintiff's merchandise from entry for refusal to file an antidumping bond, and of the Secretary's underlying finding of dumping. Defendant's alternative motion for summary judgment was held to be premature under Rule 8.2(a) inasmuch as defendant had not then filed an answer. Defendant has since filed its answer to the complaint, and the action is presently pending before the Court on cross–motions for summary judgment.

It appears from plaintiff's moving affidavit and attached documents that the merchandise has now been in a General Order status for more than a year, and therefore is subject to sale at public auction as unclaimed and abandoned merchandise pursuant to 19 U.S.C. § 1491 as amended;[3] that plaintiff has no intention of abandoning the subject merchandise, but rather is asserting a claim for its entry and delivery in the present action; and that plaintiff's efforts to obtain an informal agreement by Customs to continue holding the merchandise in a General Order status until a decision in this litigation becomes final were not successful.[4]

On the return date of the order to show cause (August 20, 1980) oral argument was heard by the Court. Defendant did not oppose plaintiff's motion, conceding *arguendo* that if the court has subject matter jurisdiction (which defendant does not concede), the Customs Court has the power to grant the equitable relief sought by plaintiff under the All Writs Act (T. Oral Arg. 5). Thus, there is no dispute between the parties that the All Writs Act is applicable to the Customs Court under the circumstances of this case.

The Customs Court was established by an act of Congress on May 28, 1926, superseding the "Board of General Appraisers".[5] 19

---

3. This statutory provision, so far as pertinent, reads:

> Any entered or unentered merchandise (except merchandise entered under section 557 of this Act [19 USCS § 1557], but including merchandise entered for transportation in bond or for exportation) *which shall remain in customs custody for one year from the date of importation thereof,* without all estimated duties and storage or other charges thereon having been paid, shall be considered unclaimed and abandoned to the Government and shall be appraised and sold by the appropriate customs officer at public auction under such regulations as the Secretary of the Treasury shall prescribe. * * * [Emphasis added.]

See also 19 C.F.R., Part 127.

4. A letter dated August 11, 1980 from the Regional Commissioner of Customs at the Port of New York to plaintiff's counsel informed plaintiff that under the law (19 U.S.C. § 1491) and regulations, the Commissioner had no administrative discretion to extend the one year General Order period, and hence the merchandise would be scheduled for sale at the next regular sale occurring after August 14, 1980.

5. Significantly, Congress has before it historic legislation (S.1654–entitled the "Customs Courts Act of 1979", and H.R. 7540–entitled the "Customs Courts Act of 1980"), providing *inter alia* for greatly expanding the jurisdiction of the Customs Court, changing the Court's name to "United States Court of International Trade", and granting to that Court all of the powers in law and equity of, or as conferred by statute upon, a district court of the United

U.S.C. § 405a. Moreover, in 1956, the Customs Court was declared to be a court established under Article III of the Constitution of the United States. 28 U.S.C. § 251. Consequently, I have no doubt that Congress intended that the All Writs statute, 28 U.S.C. § 1651(a), could be applied by this Court in appropriate circumstances.

Although 28 U.S.C. § 1651(a) refers to "all writs necessary or appropriate in aid of their respective jurisdictions", courts have interpreted the statute as authorizing injunctions to protect and effectuate their judgments. See *Baker v. Gotz*, 415 F.Supp. 1243, 1247 (D.Del.1976), *aff'd*, 546 F.2d 415 (3d Cir. 1976). Generally, the object of a preliminary injunction is to preserve the status quo until a full and final hearing on the merits. *Cywan v. Blair*, 16 F.2d 279 (N.D.Ill.1926). The Customs Court is a court of limited jurisdiction. Its authority to grant injunctive relief under 28 U.S.C. § 1651(a) is strictly auxiliary in aid of its jurisdiction. Moreover, "[e]quity power can apply only to matters within a court's jurisdiction and cannot be exercised in disregard of the mandatory requirements of the jurisdictional statute". *United States v. Boe*, 64 CCPA 11, 18 (n.9), C.A.D. 1177, 543 F.2d 151 (1976).

As aptly observed by Judge Watson in *Russell Stanfield Dexter v. United States*, 78 Cust.Ct. 179, 180, C.R.D. 77–1, 424 F.Supp. 1069 (1977):

The All Writs Act does not give this court jurisdiction to require anyone to satisfy the pre–conditions of jurisdiction. *It only gives the court instruments with which to effectuate existing jurisdiction.* [Emphasis added.]

And in *Alberta Gas Chemicals, Inc. v. W. Michael Blumenthal, Secretary of the Treasury, et al.*, 82 Cust.Ct. 77, 88–89, C.D. 4792, 467 F.Supp. 1245 (1979), this Court stated:

Similarly, the All Writs Act, 28 U.S.C. 1651, also relied upon by plaintiff, does not give this court jurisdiction to grant plaintiff the requested relief, *but may*

States. These companion bills, respectively, were passed unanimously: S.1654 on December 18, 1979, and H.R. 7540 on this very day.

*only be utilized in aid of existing jurisdiction, that is to say, where the jurisdictional prerequisites of 28 U.S.C. 1582 are present.* [Emphasis added.]

See also: *Matsushita Electric Industrial Company, Ltd., et al. v. The United States Treasury Department et al.*, 67 Cust.Ct. 328, C.D. 4292 (1971), *aff'd*, 60 CCPA 85, C.A.D. 1086, 485 F.2d 1402 (1973), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973); *Flintkote Company, Glens Falls Division v. United States (Independent Cement Co., Party in Interest)*, 82 Cust.Ct. 305, C.R.D. 79–5, 467 F.Supp. 626 (1979); and *J. C. Penney Company, Inc. v. United States Treasury Department et al.*, 439 F.2d 63, 68 (2d Cir. 1971), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971).

Unlike the circumstances in the above–cited authorities wherein the Courts declined to grant equitable relief pursuant to the All Writs Act, plaintiff here has not sought to use that Act as a vehicle by which the Court should exercise jurisdiction. Rather, plaintiff urged and this Court heretofore decided in C.R.D. 80–1, that the present case has been properly brought to contest the denial of a protest against an administrative decision cognizable under 19 U.S.C. § 1514(a)(4) and 28 U.S.C. § 1582(a)(4); and that the Court has jurisdiction to decide the issues pertinent to that administrative decision. The All Writs Act gives this Court the power to grant the requested relief only in aid of, and in this situation, *in preservation of its jurisdiction.* The significance of this application of the All Writs Act lies in the obvious fact that the imported merchandise is the *res* of the action. Its sale at public auction by the Customs Service would make the merchandise unavailable for entry by, and delivery to plaintiff, in the event of a final decision on the merits favorable to plaintiff. Plainly, under such circumstances the fruits of litigation would be lost by a sale at public auction at this time, plaintiff would suffer irreparable harm, and such sale would render the issue before the Court moot.

The Senate and House versions are awaiting final Congressional resolution before transmittal of the legislation to the President.

██ In sum, it is clear from the circumstances presented here, that the granting of the relief sought by plaintiff would maintain the advisable status quo, and is in aid of the Court's jurisdiction. Such relief is admittedly within the power of the Court to grant, pursuant to the All Writs Act.

██ Lastly, the granting of injunctive relief *pendente lite* does not infringe upon 19 U.S.C. § 1451, as any sale of the merchandise is merely suspended or deferred until after final determination of the merits of this litigation. It may be, as suggested by counsel for defendant, that during the period of restraint the subject merchandise may decline in value. A claim that injurious consequences will result to the Government if the General Order merchandise is not promptly sold may not, of course, be disregarded by the Court; nevertheless, it presents a question addressed not to the power of the Court, but to its discretion or the propriety of the exercise of its power. Here, defendant's fear of a loss of value of the subject merchandise has been completely obviated by including in the proposed order—following this Court's suggestion—a provision for security in an amount that has been mutually agreed upon by the parties.

For the reasons set forth herein, this Court has entered the attached order (which has been jointly proposed by the parties), and this memorandum shall be deemed to be incorporated into and to supplement that order.