**AL TECH SPECIALTY STEEL CORPORATION; Armco, Inc.; Carpenter Technology Corporation; and Crucible Stainless Steel Division of Colt Industries, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Ugine Aciers and Intsel Corporation, Intervenors.**

Court No. 83–1–00118.

United States Court of International Trade.

Nov. 21, 1983.

Collier, Shannon, Rill & Scott, Washington, D.C. (David A. Hartquist, Paul C. Rosenthal and David L. Dick, Washington, D.C., on briefs), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Lit. Branch, Washington, D.C. (Velta A. Meln-

brencis, New York City, on briefs), for defendant.

Covington & Burling, Washington, D.C. (Harvey M. Applebaum, Washington, D.C., on briefs), for intervenors.

## Opinion and Order

MALETZ, Senior Judge:

Plaintiffs have moved for a preliminary injunction pursuant to rule 65 of the rules of this court to enjoin *pendente lite* the liquidation of entries of stainless steel wire rods entered by intervenors Ugine Aciers and Intsel Corporation (Ugine Aciers). That merchandise is the subject of an outstanding dumping finding issued in 1973, *see* 38 Fed.Reg. 9,094 (1973), which was administratively reviewed by the Department of Commerce, International Trade Administration (ITA), under section 751(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a) (Supp. IV 1980). *See* 48 Fed.Reg. 2,808 (1983). Plaintiffs now seek injunctive relief pending resolution of their judicial challenge to that section 751 review.

In order to prevail on a motion for a preliminary injunction, plaintiffs must show (1) that they will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors petitioners. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983). *See also S.J. Stile Assoc., Ltd. v. Snyder*, 646 F.2d 522, 525 (CCPA 1981); *The Timken Co. v. United States*, 6 CIT ——, 569 F.Supp. 65, 68 (1983). Considering for the moment the second of these four criteria, in their complaint plaintiffs have taken issue with two alleged procedural irregularities in the ITA's section 751 review. In an opinion promulgated this day the court has addressed each of those challenges, ruling

for plaintiffs on an issue involving information verification under section 776(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677e(a) (Supp. IV 1980). *See AL Tech Specialty Steel Corp. v. United States*, 1277 F.Supp. 575 Slip Op. 83–119 (C.I.T. Nov. 21, 1983).[1]

While in a strictly technical sense plaintiffs have now prevailed on the "merits" of their complaint, they have not done so in the more refined and ultimate sense of that term. For plaintiffs have yet to begin their attack on the substantive aspects of the ITA's section 751 review—in this court's view, the "true" merits. This is quite understandable, naturally, since without verification of the information submitted by Ugine Aciers it is literally impossible for plaintiffs to meaningfully challenge the substance of the ITA's section 751 results. No one can know upon what those results are predicated absent such verification.

The present action is thus merely a prelude. It certainly takes little prescience to predict, of course, that plaintiffs will launch a direct attack on the ITA's final results following the verification process, contingent upon just what that verification reveals. In the meantime, however, the court is faced with the unusual situation of being totally unable to make any prognostication as to the likelihood of plaintiffs' ultimate success. But it is also patently clear that plaintiffs will suffer irreparable harm if liquidation of those entries occurring during the review period is not enjoined. Insofar as irreparable harm is concerned, the Federal Circuit noted in its recent *Zenith* opinion that:

Without a preliminary injunction, all of the entries occurring during the review period will be liquidated immediately, with dumping duties assessed in accordance with the margin set by the review determination. This result is required, in the absence of a preliminary injunction, by two sections of the Trade Agreements

---

**1.** In that opinion the court upheld the ITA's decision not to undertake a cost-of-production investigation under 19 U.S.C. § 1677b(b) (Supp. IV 1980), but held that the ITA had a duty under 19 U.S.C. § 1677e(a) (Supp. IV 1980) to verify information submitted by intervenors in the course of its section 751 review. The case has been remanded to the ITA for verification of that information.

Act of 1979 [19 U.S.C. §§ 1516a(e) and (c)(1) (Supp. IV 1980)].

\*   \*   \*   \*   \*   \*

The statutory scheme has no provision permitting reliquidation in this case or imposition of higher dumping duties after liquidation if Zenith is successful on the merits. Once liquidation occurs, a subsequent decision by the trial court on the merits of Zenith's challenge can have no effect on the dumping duties assessed on entries of television receivers during the '79–'80 review period.... [Zenith] has a strong, continuing, commercial-competitive stake in assuring that its competing importers will not escape the monetary sanctions deliberately imposed by Congress. Defeat of that strong congressionally recognized competitive interest and the abrogation of effective judicial review are sufficient irreparable injury here.

*Id.* at 810. In the present case plaintiffs are precisely circumstanced as was Zenith relative to entries occurring during the section 751 review period—absent an injunction, those entries will be liquidated immediately, thereby frustrating plaintiffs' right to judicial review in connection with those entries. Therefore, to that extent unless liquidation is enjoined, plaintiffs will forever lose their statutory right to challenge in this forum any errors in the ITA's final results attributable to the failure of the ITA to verify the information submitted by Ugine Aciers. More importantly, such liquidation will oust this court of jurisdiction vis-a-vis those entries.

Given these circumstances, the court believes that the most appropriate vehicle for preserving its jurisdiction and, concomitantly, plaintiffs' judicial review rights, is an injunction issued pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (1976).[2] *See Alberta Gas Chemicals, Inc. v. United States,* 85 Cust.Ct. 122, 125, C.R.D. 80–13, 496 F.Supp. 1332, 1335 (1980). The court is led to this conclusion by two decisions of the Supreme Court involving the All Writs Act. The first is *FTC v. Dean Foods Co.,* 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966), where the Court noted:

> [D]ecisions of this Court "have recognized a limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the prescribed statutory channels.... Such power has been deemed merely incidental to the courts' jurisdiction to review final agency action ...." *Arrow Transp. Co. v. Southern R. Co.,* 372 U.S. 658, 671, n. 22 [83 S.Ct. 984, 991, n. 22, 10 L.Ed.2d 52] (1963).

*Id.* at 604, 86 S.Ct. at 1742. The court finds even more compelling the Supreme Court's further observation in the All Writs context that:

> If the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made.

*Scripps-Howard Radio, Inc. v. FCC,* 316 U.S. 4, 10, 62 S.Ct. 875, 880, 86 L.Ed. 1229 (1942). On the strength of these pronouncements, the court is firmly convinced that in the exercise of its sound discretion issuance of an injunction under the All Writs Act is appropriate here.

Accordingly, it is hereby ordered:

1. That defendant be, and it hereby is, restrained and enjoined from liquidating any and all entries of the merchandise covered by the final results of administrative review, a notice of which was published on January 21, 1983, in 48 Fed.Reg. 2,808; and

2. That unless sooner modified or vacated for good cause shown this order shall expire *ex proprio vigore* thirty days after publication in the Federal Register of notice of defendant's redetermination.

---

**2.** The All Writs Act provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.