**AMERICAN SPRING WIRE CORP.,**
**et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**Trefileries Et Cableries Chiers Chatillon Gorcy and Companhia Siderurgica Belgo-Mineira, Interventors.**

Court Nos. 82–10–01355, 83–1–00101, 83–3–00371 and 83–3–00455.

United States Court of
International Trade.

Jan. 19, 1984.

Stewart & Stewart, Washington, D.C. (Eugene L. Stewart, Terence P. Stewart, Paul W. Jameson and Kathleen T. Weaver, Washington, D.C., on brief), for plaintiffs.

Michael H. Stein, Gen. Counsel, Michael P. Mabile, Asst. Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C. (Jack M. Simmons, III, Washington, D.C., on brief), for defendant.

Fox, Glynn & Melamed, New York City (Raymond F. Steckel and Garry P. McCormack, New York City, on brief), for intervenor Trefileries et Cableries Chiers Chatillon Gorcy.

Wald, Harkrader & Ross, Washington, D.C. (Christopher Dunn, Washington, D.C., on brief), for intervenor Companhia Siderurgica Belgo-Mineira.

*Opinion and Order*

MALETZ, Senior Judge:

The plaintiffs in this consolidated action, representing the American steel wire strand industry, have made application for a preliminary injunction. They ask the court to enjoin the liquidation of entries of steel wire strand from Brazil, France, Spain and the United Kingdom pending resolution of their challenge to the final nega-

tive injury determinations by the U.S. International Trade Commission (ITC or Commission). *See* 19 U.S.C. §§ 1671d(b) and 1673d(b) (1982). Those four ITC determinations were made on September 1, 1982 for Spain, *see* 47 Fed.Reg. 38,648; on December 15, 1982 for France, *see* 47 Fed. Reg. 56,213; on February 9, 1983 for the United Kingdom, *see* 48 Fed.Reg. 6,044; and on March 23, 1983 for Brazil, *see* 48 Fed.Reg. 12,143. With the exception of the United Kingdom case involving dumped steel wire strand, all the ITC determinations stemmed from affirmative findings by the Department of Commerce, International Trade Administration, that the imports were being subsidized.

Four complaints were timely filed with this court for each of the ITC determinations. In view of the commonality of issues among the four cases—whether the Commission erred in not cumulating the imports from all four countries, whether it erred in its conclusions regarding price suppression and the importance of price in general, and whether the Commission erred in assaying the impact of the imports on the American industry—the actions were consolidated on July 25, 1983. That same day plaintiffs' request for access to confidential information was also granted, which information was provided by the Commission up to and through the middle of November, 1983. Approximately one month later, on December 19th, plaintiffs filed motions for a temporary restraining order, preliminary injunction, and judgment upon the agency record. This court denied their motion for a temporary restraining order on December 20th, and heard plaintiffs' motion for a preliminary injunction on January 4, 1984. It is to a consideration of that motion that the court now turns.

In order to prevail on a motion for a preliminary injunction, plaintiffs must show (1) that they will be immediately and irreparably injured; (2) that there is a like-

lihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors petitioners. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983). *See also S.J. Stile Associates, Ltd. v. Snyder*, 646 F.2d 522, 525, 68 CCPA 27 (1981); *The Timken Co. v. United States*, 6 CIT —, 569 F.Supp. 65, 68 (1983); *AL Tech Specialty Steel Corp. v. United States*, 575 F.Supp. 1285 (CIT 1983). Considering for the moment the first of these four criteria, plaintiffs have submitted no affidavits and have offered no testimony to substantiate their claim of irreparable injury. Although at the hearing counsel for plaintiffs recited some Commerce Department import statistics for steel wire strand—allegedly indicating that the price for imported steel wire strand had declined in 1983—there is no indication whether that price was c.i.f., f.o.b. or the importers' sales price. Instead they rely exclusively upon the Federal Circuit's *Zenith Radio Corp.* decision for their showing of irreparable injury. The court finds plaintiffs' reliance on Zenith misplaced.

Of critical importance in *Zenith* was that irreparable injury was conclusively presumed. *Id.* at 810. For Zenith's statutory right to obtain judicial review of the administrative agency's determination of *de minimis* dumping margins would have been without meaning since all the entries permanently affected by that determination would have been liquidated.[1] Such liquidation, then, would have effectively eliminated the *only* remedy available to Zenith to redress an incorrect review determination. *Id.* An additional factor considered significant by the Federal Circuit was that the Commission had recently determined that the domestic industry would suffer material injury if the dumping duty order was revoked. *Id.* at 811. These factors led the

---

1. As explained by the Federal Circuit in *Zenith:* This result [i.e., liquidation] is required, in the absence of a preliminary injunction, by two sections of the Trade Agreements Act of 1979 [19 U.S.C. §§ 1516a(e) and 1516a(c)(1) ] . . . .

> Once liquidation occurs, a subsequent decision by the trial court on the merits ... can have no effect on the dumping duties assessed on entries ... during the review period.
> *Id.* at 810.

court to conclude that Zenith would suffer irreparable injury absent an injunction *pendente lite.*

The essential element that sets *Zenith* and its progeny apart is their legal setting. Those cases involve judicial scrutiny of administrative reviews of outstanding antidumping and countervailing duty orders under section 751 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979, 19 U.S.C. § 1675 (1982). Section 751 administrative reviews focus on a discrete time period, typically the one-year period immediately preceding the date of review and the one-year period immediately thereafter. *See* 19 U.S.C. § 1675(a)(1). Those reviews only affect the imports actually entered during that two-year period. In operation all unliquidated entries for the period prior to the administrative review are liquidated in accordance with the agency's determination of dumping margins or subsidies found to exist for that period. That determination serves as the benchmark for deposits of estimated antidumping or countervailing duties on all future entries pending the next annual section 751 review. At that next annual review actual duties are assessed on the entries coming into the United States during that one-year hiatus. They are then liquidated in accordance therewith. Judicial review of this administrative process is similarly circumscribed by these time and entry considerations.

The periodic nature of section 751 reviews highlights how singular they are in the context of injunctive relief and the Trade Agreements Act of 1979. Reviewing courts have in effect a one-year window within which to act before all entries which are the subject of the particular section 751 review have been liquidated. However, if past experience is an accurate indicator, in the normal course of events final judicial review will take far longer than that to complete. Consequently, if a petitioner satisfies the other three *Stile* criteria, *see S.J. Stile Associates,* 646 F.2d at 525, an injunction will issue. *Zenith,* 710 F.2d at 812 (Nies, J., concurring). Otherwise, if a court in this situation does not enjoin liquidation of entries pending resolution of challenges to the section 751 review then under consideration, the practical effect will be to moot the controversy and, at the same time, deprive plaintiffs of their right to judicial review of the agency's section 751 review determination. *See The Timken Co.,* 569 F.Supp. at 69. In short, a plaintiff's right to judicially challenge the agency's calculation of duties altogether vanishes once the entries which are the subject of the review are liquidated.[2]

The unique aspect of section 751 administrative reviews—their capacity for eluding judicial scrutiny because of their periodic nature—is simply not present here. This action centers on final negative injury determinations under 19 U.S.C. §§ 1671d and 1673d (1982). Those determinations, unlike their section 751 counterpart, are not transitory. They will, as a practical matter, extend *in futuro,* unless upset by an intervening judicial decision. And should this court ultimately reverse the Commission's negative injury determinations, antidumping and countervailing duties can still be assessed at that time on all unliquidated as well as future entries pursuant to an affirmative injury determination. Thus, unlike in the section 751 review context, plaintiffs will unquestionably have meaningful judicial review regardless of whether an injunction now issues.[3]

---

**2.** In this respect, injunctions issued in the section 751 review context are of the All Writs Act type, designed to preserve the reviewing court's jurisdiction, rather than of the rule 65 variety. *See AL Tech Specialty Steel Corp. v. United States,* 575 F.Supp. 1285 (CIT 1983). *Cf. Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983).

**3.** It is true that imports of steel wire strand which are entered pending final judicial review will be liquidated. But this fact alone does not answer the question whether plaintiffs are entitled to this court's assistance in maintaining the advantage that suspension of liquidation might otherwise give them. Plaintiffs still must make some showing that injunctive relief is warranted under the four criteria of *S.J. Stile Associates, Ltd. v. Snyder,* 646 F.2d 522, 525 (CCPA 1981), a showing they have failed to make insofar as irreparable injury is concerned.

The difficulty with plaintiffs' argument for extending *Zenith* is that it proves too much. They advocate nothing less than a *per se* rule which would create an irrebutable presumption of irreparable harm in all cases where judicial review of agency action is concerned. Adopting their position would effectively eliminate a showing of irreparable harm as one of the four prerequisites for injunctive relief in this court. Congress certainly contemplated no such result. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 253 (1979), U.S.Code Cong. & Admin. News 1979, pp. 381, 639 ("the issuance of injunctive relief [suspending liquidation of entries] is truly an extraordinary measure and [such] relief should not be granted in the ordinary course of events."). What is more, considering the novelty of most issues coming before the Commission and the International Trade Administration, it will take little ingenuity on the part of competent counsel to fashion a case in which there appears to be a likelihood of success on the merits. Given this consideration, unless some line is drawn in connection with the question of irreparable harm, the issuance of injunctions in every countervailing and antidumping duty case may become virtually automatic. This would be a result which Congress obviously never intended. It would be anathema to the notion that injunctive relief is "an extraordinary measure."

■ The court is of the view that before issuing a preliminary injunction inquiry must first be made as to the nature of the administrative determination under judicial consideration. If it is a final agency determination under 19 U.S.C. §§ 1303, 1671d or 1673d, the party seeking injunctive relief must make some showing of immediate and irreparable injury beyond the mere invocation of *Zenith*.

In sum, the present case is clearly distinguishable from *Zenith*. In *Zenith* there would have been no unliquidated entries subject to the reach of a judicial order, thereby effectively negating judicial review rights. Here, the statutory scheme, particularly plaintiffs' right to judicial review, will not be impaired, and the merits of the action will not be mooted, even though no injunction issues.

Accordingly, plaintiffs having made no showing of irreparable harm by any probative evidence, their motion for a preliminary injunction is denied.