**DIVERSIFIED PRODUCTS CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 82–7–01065.**

United States Court of International Trade.

Feb. 29, 1984.

Lamb & Lerch, Richard J. Kaplan, New York City, of counsel (Sidney H. Kuflik, New York City, on the brief), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Robert F. Seely, International Trade Administration, U.S. Dept. of Commerce, Washington, D.C., of counsel (Francis J. Sailer, Washington, D.C., on the briefs), for defendant.

Eugene L. Stewart, Terence P. Stewart and Jeffrey S. Beckington, Washington, D.C., for intervenor Stewart-Warner Corp.

*Opinion and Order*

MALETZ, Senior Judge:

In an opinion and order filed in this action on September 27, 1983, the court affirmed the final results of an administrative review conducted by the Department of Commerce, International Trade Administration (ITA), pursuant to section 751 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979, 19 U.S.C. § 1675 (1982). *Diversified Products Corp. v. United States*, 6 CIT ——, 572 F.Supp. 883. The court also granted the government's cross-motion to remand the case to the ITA for a redetermination of the amount of estimated antidumping duties to be deposited on future entries of the merchandise—bicycle speedometers from Japan. *Id.*, 572 F.Supp. at 890. The revised results of that remand are the focus of this present proceeding.

The dumping margin was initially determined by the ITA to be 25.98 percent *ad valorem*, representing the highest margin found to exist for any responding firm during the ITA's section 751 review. Admitting error in its methodology, the ITA indicated it would recompute the dumping margin on remand, employing a weighted average margin for all responding firms. As recomputed the dumping margin would be lowered to 20.04 percent *ad valorem*, thereafter serving as the benchmark for deposits of estimated antidumping duties on all future entries.

While plaintiff Diversified Products Corp. has no objection to the new margin, it does object to the Customs Service's retention of the 5.94 percent difference in its deposits of estimated duties. For that reason Diversified seeks an immediate refund of this difference. The government concedes that Diversified will be entitled to a refund should the amount of actual anti-

dumping duties assessed at the time of liquidation be lower than the amount deposited as estimated duties. However, the government insists, Diversified must wait until the entries for which estimated antidumping duties were deposited are liquidated. The court agrees with the government.

The rub for Diversified, of course, is that it is being required to wait for any refund until the next annual section 751 review. At that time, under existing administrative practice, all unliquidated entries of bicycle speedometers entered during the review period will be liquidated in accordance with the actual dumping margin found to exist for that period. If that figure exceeds the amount of estimated duties deposited for the period, Diversified will be assessed the difference. Conversely, if that figure is lower than the amount of estimated duties deposited with Customs, Diversified will receive a refund of the difference with interest. The court believes that this administrative practice comports with the statutory scheme under which the ITA and Customs currently operate.

First of all, section 737(b) of the Trade Agreements Act of 1979, 19 U.S.C. § 1673f(b) (1982), provides:

> If the amount of an estimated antidumping duty ... is different from the amount of the antidumping duty determined under an antidumping duty order published under section 1673e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption ... shall be—
>
> (1) collected, to the extent that the deposit under section 1673e(a)(3) of

this title is lower than the duty determined under the order, or

> (2) refunded, to the extent that the deposit under section 1673e(a)(3) of this title is higher than the duty determined under the order,

together with interest as provided by section 1677g of this title.

From the plain language of this section the focal date for a refund (or collection of additional duties) is the date the "duty [is] determined under the [antidumping duty] order." By logical extension, since "a section 751 review represents the duty assessment phase of an antidumping duty investigation", *AL Tech Specialty Steel Corp. v. United States*, 6 CIT ——, 575 F.Supp. 1277., 1283 (1983), the government takes the position that a refund of an estimated duty overpayment is likewise not due in the section 751 review context until those duties are "determined".[1] *See Asahi Chemical Industry Co. v. United States*, 1 CIT 286, 548 F.Supp. 1261, 1265 (1982). This duty determination does not occur, insofar as entries made during a review period are concerned, until the next annual section 751 review. *See American Spring Wire Corp. v. United States*, 7 CIT ——, ——, 578 F.Supp. 1405 (1984). At that time actual duties are assessed and the entries for that period are liquidated in accordance therewith. *Id.* Refunds or additional collections are then made. The court feels that this administrative practice is consonant with the Trade Agreements Act of 1979, especially sections 737 and 751, 19 U.S.C. §§ 1673f and 1675.

---

[1]. Section 751, 19 U.S.C. § 1675, provides in part:

(a) *Periodic review of amount of duty*
(1) *In general*
   At least once during each 12-month period beginning on the anniversary of the date of publication of ... an antidumping duty order ... the administering authority ... shall—
       \*   \*   \*   \*   \*   \*
   (B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty,
       \*   \*   \*   \*   \*   \*
and shall publish the results of such review, together with notice of any duty to be as-

sessed [or] estimated duty to be deposited
. . . .

(2) *Determination of antidumping duties*
       \*   \*   \*   \*   \*   \*

The administering authority, without revealing confidential information, shall publish notice of the results of the determination of antidumping duties in the Federal Register, and that determination shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties.

Any lingering doubts as to the propriety of this administrative practice are resolved by section 520(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1520(a) (1982). That section, entitled "Refunds and Errors," authorizes the Secretary of the Treasury to refund duties "[w]henever it is ascertained *on liquidation . . . of an entry* that more money has been deposited . . . as duties than was required by law to be so deposited" (emphasis added). Here, since there was no clerical error, but rather error predicated on faulty methodology—that is, one erroneous as a matter of law—section 520(a) is applicable. Accordingly, reading the amended Tariff Act of 1930 as a whole, particularly sections 520(a), 737 and 751, *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962); *In re Nantucket, Inc.*, 677 F.2d 95, 98 (CCPA 1982), it is clear that the act of liquidation—which cannot take place until actual antidumping duties have been determined and assessed—is the event which triggers the payment of any refund.

There is, in sum, no statutory authority for the ITA or Customs to grant the immediate refund sought by Diversified. *See Ceramica Regiomontana, S.A. v. United States*, 5 CIT —, 557 F.Supp. 596, 602–03 (1983). Any harshness resulting from this process is ameliorated by the provision for interest on refunds under 19 U.S.C. § 1677g (1982). *See also Asahi Chemical Industry Co.*, 548 F.Supp. at 1264 & n. 2 (agency's interpretation of a statute must be "sufficiently reasonable" to be accepted by a court). *But see Ambassador Division of the Florsheim Shoe Co. v. United States*, 6 CIT —, 577 F.Supp. 1016 (1983) (appeal pending) (administrative practice of suspending liquidation of entries pending next annual section 751 review invalid in connection with nonsignatory country).

For the foregoing reasons, the government's motion for an order affirming the revised remand results is granted. Judgment shall enter accordingly.

---

* Judge Milton Pollack recused himself and took no part in the decision of this matter. Addition-