# United States Court of Appeals for the Federal Circuit

2007-1143

GERDAU AMERISTEEL CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S.,

Defendant-Appellee.

Damon E. Xenopoulos, Brickfield, Burchette, Ritts & Stone, P.C., of Washington, DC, argued for plaintiff-appellant. With him on the brief was Eric J. Lacey.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee, United States. With her on the brief were Jeanne E. Davidson, Director, and David S. Silverbrand, Attorney. Of counsel was Scott McBride, United States Department of Commerce, of Washington, DC.

Lawrence A. Schneider, Arnold & Porter LLP, of Washington, DC, argued for defendant-appellee, Icdas Celik Enerji Tersane Ve Ulasim Sanayi, A.S.

Appealed from: United States Court of International Trade

Judge Gregory W. Carman

# United States Court of Appeals for the Federal Circuit

2007-1143

GERDAU AMERISTEEL CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S.,

Defendant-Appellee.

Appeal from the United States Court of International Trade in Case No. 04-00608, Judge Gregory W. Carman.

_____

DECIDED: March 12, 2008

_____

Before NEWMAN and DYK, <u>Circuit Judges</u>, and YEAKEL,[*] <u>District Judge</u>.

NEWMAN, <u>Circuit Judge</u>.

Gerdau Ameristeel Corporation appeals the ruling of the United States Court of

International Trade, dismissing as moot Gerdau's action for review of an antidumping order

---

[*] Hon. Lee Yeakel, United States District Court for the Western District of Texas, sitting by designation.

pursuant to 19 U.S.C. §1516a(a)(2).[1]  We vacate the dismissal and remand for further proceedings.

BACKGROUND

In 1997 the Department of Commerce determined that steel concrete reinforcing bars ("rebar") produced in Turkey were being sold in the United States at less than fair value.  The International Trade Commission determined that an industry in the United States was materially injured, and Commerce ordered that antidumping duties be assessed.  Antidumping Duty Order: Certain Steel Concrete Reinforcing Bars from Turkey, 62 Fed. Reg. 18,748 (Apr. 17, 1997) ("the 1997 Antidumping Order").  In accordance with 19 U.S.C. §1675, interested parties may seek annual administrative review of antidumping orders by the Department of Commerce; these reviews may be challenged by appeal to the Court of International Trade pursuant to 19 U.S.C. §1516a(a)(2), and then appealed to the Federal Circuit pursuant to 28 U.S.C. §1295(a)(5).

The Department of Commerce conducted several annual administrative reviews of the 1997 Antidumping Order.  In the Fifth Review, for the period April 1, 2001 through March 31, 2002, Commerce assigned a *de minimis* dumping margin[2] to imported products of the Turkish rebar producer ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S.

---

[1]    Gerdau Ameristeel Corp. v. United States, 442 F. Supp. 2d 1367 (Ct. Int'l Trade 2006).

[2]    A *de minimis* dumping margin is a margin below 0.5%.  19 C.F.R. §351.106(c) (2006).  The dumping margin is in general the amount by which the price in the exporting or producing country exceeds the price at which the merchandise is sold in or to the United States.  19 U.S.C. §§1677(35)(A), 1677a, 1677b.  The dumping margin determines the duty rate on imports during the period under review, and successive periods unless the margin is changed.

("ICDAS"). <u>Certain Steel Concrete Reinforcing Bars from Turkey; Final Results, Rescission of Antidumping Duty Administrative Review in Part, and Determination Not To Revoke in Part</u>, 68 Fed. Reg. 53,127, 53,128 (Sept. 9, 2003) ("Fifth Review").

In the Sixth Review, for the period April 1, 2002 through March 31, 2003, Commerce determined that ICDAS had a dumping margin of 0.00%, thus *de minimis* under 19 C.F.R. §351.106(c)(2). <u>Certain Steel Concrete Reinforcing Bars From Turkey; Final Results, Rescission of Antidumping Duty Administrative Review in Part, and Determination Not To Revoke in Part</u>, 69 Fed. Reg. 64,731, 64,733 (Nov. 8, 2004) ("Sixth Review"). Gerdau Ameristeel, a domestic manufacturer of rebar, challenged the correctness of the Sixth Review as applied to ICDAS by filing a complaint in the Court of International Trade pursuant to 19 U.S.C. §1516a(a)(2)(B)(iii). Gerdau has stated that it did not seek reliquidation of these ICDAS entries, and that its purpose was to avert revocation of the 1997 Antidumping Order as could occur after three successive *de minimis* margins as to that exporter or producer:

> In determining whether to revoke an antidumping duty order in part, the Secretary will consider:
>     (A) Whether one or more exporters or producers covered by the order have sold the merchandise at not less than the normal value for a period of at least three consecutive years;
>     (B) Whether, for any exporter or producer that the Secretary previously has determined to have sold the subject merchandise at less than normal value, the exporter or producer agrees in writing to its immediate reinstatement in the order, as long as any exporter or producer is subject to the order, if the Secretary concludes that the exporter or producer, subsequent to the revocation, sold the merchandise at less than normal value; and
>     (C) Whether the continued application of the antidumping order is otherwise necessary to offset dumping.

19 C.F.R. §351.222(b)(2)(i).  Thus, after the Fifth and Sixth *de minimis* determinations, ICDAS needed only one more consecutive *de minimis* margin to be eligible for revocation of the antidumping order.

In its complaint in the Court of International Trade, Gerdau alleged that the Sixth Review significantly understated ICDAS's dumping margin, due to three errors by Commerce: first, the decision to collapse data for ICDAS and its affiliate Demir Sanayi into a single producing entity; second, the determination that Demir Sanayi's steel rolling services are not a "major input"; and third, the decision to treat ICDAS's United States sales price as the export price instead of using a constructed export price.  Gerdau stated that these errors led Commerce to an inaccurately low weighted-average dumping margin, and it asked the court to declare Commerce's determination unlawful and to remand for redetermination.

Gerdau filed its complaint in the Court of International Trade on December 29, 2004, but did not seek to enjoin liquidation of ICDAS's entries that were subject to the Sixth Review, as it could have done pursuant to 19 U.S.C. §1516a(c)(2).  The United States Customs and Border Protection agency ("Customs") liquidated these entries on December 17, 2004 and February 11, 2005.  The defendants then moved to dismiss the appeal for lack of jurisdiction, arguing that because Gerdau had not sought to enjoin the liquidation it lacked a remedy for any errors in the Sixth Review margin determination, citing Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983), and therefore that the appeal was rendered moot.  The Court of International Trade granted the dismissal, ruling

that the liquidation of these entries eliminated the only remedy for an incorrect Sixth Review, thereby depriving the court of subject matter jurisdiction.

While Gerdau's appeal of the Sixth Review was pending in the Court of International Trade, Commerce conducted a seventh administrative review as to ICDAS and other rebar producers, for the period April 1, 2003 through March 31, 2004. Commerce again found that ICDAS's dumping margin was *de minimis* and, upon this third consecutive *de minimis* finding, revoked the 1997 Antidumping Order as it pertained to ICDAS. Certain Steel Concrete Reinforcing Bars From Turkey; Final Results, Rescission of Antidumping Duty Administrative Review in Part, and Determination To Revoke in Part, 70 Fed. Reg. 67,665 (Nov. 8, 2005) ("Seventh Review"). Gerdau and other domestic rebar producers have challenged the Seventh Review in a separate action in the Court of International Trade. At the request of the petitioners in that action, the court preliminarily enjoined liquidation of the entries subject to the Seventh Review, but declined to extend the injunction to entries after the Seventh Review period. Nucor Corp. v. United States, 412 F. Supp. 2d 1341, 1343, 1357 (Ct. Int'l Trade 2005).

This appeal is directed to the dismissal of Gerdau's appeal of the Sixth Review.

## DISCUSSION

Gerdau does not request reliquidation of the ICDAS rebar that was subject to the Sixth Review; however, Gerdau seeks redetermination of the *de minimis* dumping margin for the period of the Sixth Review, stating that it was incorrectly measured and that correction of the Sixth Review would have the tangible consequence of averting revocation of the Antidumping Order after the Seventh Review, and therefore that the appeal is not mooted by the liquidation.

The government and ICDAS respond that Gerdau lost its only ground for challenging the Sixth Review when Gerdau did not seek to enjoin or suspend liquidation of the ICDAS entries subject to the Sixth Review, and that this court's decision in Zenith requires that result. Zenith held that since liquidation deprives a challenger of its only remedy for an incorrect dumping margin determination, this creates an irreparable injury that must be weighed in considering whether to enjoin liquidation pending judicial review. 710 F.2d at 810-11. The appellees argue that, with one exception, this holding of Zenith has led the courts to find appeals of administrative reviews moot where liquidation has already occurred. See, e.g., SKF USA Inc. v. United States, 512 F.3d 1326,1332, (Fed. Cir. 2008) (finding action challenging administrative review of antidumping order moot under Zenith in light of deemed liquidation); Chr. Bjelland Seafoods A/S v. United States, 19 Ct. Int'l Trade 35, 51-52 (1995) (dismissing challenge to administrative review of antidumping determinations as moot). But see Hylsa, S.A. de C.V. v. United States, 469 F. Supp. 2d 1341, 1345 (Ct. Int'l Trade 2007) (finding liquidation did not moot challenge to the dumping margin calculated in an administrative review where that margin "may have consequences for future revocation determinations" in light of 19 C.F.R. §351.222(b)(2)).

Gerdau contends that Zenith does not extend to the present facts, because there was no issue in Zenith of the effect of liquidation of a specific entry on the future application of the antidumping order, quite apart from the antidumping duty assessed for that specific entry. Gerdau acknowledges that liquidation ended its right to challenge the duty assessed on the goods subject to the Sixth Review, but it argues that since its challenge to the dumping margin of the Sixth Review affects subsequent years, that challenge is not

extinguished or mooted by the liquidation. The government disagrees, and also argues that Gerdau cannot seek relief that would have an effect outside the Sixth Review, because separate periods of review must be challenged separately. ICDAS further argues that the regulation establishing conditions for revocation, which include three consecutive periods of a *de minimis* dumping margin, cannot provide a basis for jurisdiction that is lacking in the statute.

**A**

The Court of International Trade found no defect in the asserted statutory basis for jurisdiction, but instead dismissed the appeal as moot in light of the liquidation. The premise of "mootness" arises from the case or controversy requirement of Article III of the Constitution. See, e.g., Allen v. Wright, 468 U.S. 737, 750 (1984) (discussing Article III justiciability doctrines and constitutional and prudential limits on the exercise of federal judicial power); North Carolina v. Rice, 404 U.S. 244, 246 (1971) (describing mootness as a "jurisdictional question" derived from the Article III case or controversy requirement). The Court has explained that a case becomes moot when it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48 (1969). Thus, to avoid dismissal for mootness, an actual controversy must remain at all stages, not merely at the time the complaint is filed. E.g., Steffel v. Thompson, 415 U.S. 452, 460 n.10 (1974).

Gerdau states that the finding of a *de minimis* margin in the Sixth Review presents an actual controversy because it has implications for revocation of the entire antidumping duty order under 19 C.F.R. §351.222(b)(2)(i), thereby having consequences beyond the

imports during the year of the Sixth Review. Gerdau argues that it was not required to enjoin the liquidation of those imports in order to preserve the right to seek correction of the margin determination to the extent it affects future entries. We agree that while Zenith may bar remedy as to the liquidated goods, Zenith did not concern consequences of the dumping margin review apart from the duties imposed on the liquidated goods.

In Zenith a domestic television manufacturer challenged an annual review determination that reduced the dumping margins for imported television sets, and the Court of International Trade had denied Zenith's request for a preliminary injunction to prevent liquidation. The Federal Circuit, ruling that irreparable injury to the domestic industry had been shown, observed that allowing liquidation before a decision on the merits of the dumping margin would deprive Zenith of its "statutory right to obtain judicial review of the determination." Zenith, 710 F.2d at 810. This court remanded for consideration of all of the preliminary injunction factors in light of the existence of irreparable injury. Zenith does not resolve the facts of the Gerdau situation.

Zenith did not establish a blanket rule that there can never be a post-liquidation review of an administrative review determination, even when that determination affects matters other than the specific liquidated goods. Ensuing decisions of the Court of International Trade reflect this scope. For example, in American Spring Wire Corp. v. United States, 7 Ct. Int'l Trade 2 (1984), the court distinguished a challenge to an antidumping duty which could affect only the specific imports, from a challenge to a final negative injury determination which "will, as a practical matter, extend *in futuro*, unless upset by an intervening judicial decision." Id. at 5. The court declined to preliminarily enjoin liquidation of the specific entries of the steel wire strand because liquidation would

not eliminate the only remedy for the plaintiffs' challenge, and hence their appeal would not be rendered moot in the absence of an injunction. Id. at 5-6; see also Sandoz Chems. Corp. v. United States, 17 Ct. Int'l Trade 1061, 1063 (1993) (distinguishing Zenith on the same basis).

In SKF USA, this court applied the reasoning in Zenith and held that after "deemed" liquidation has occurred by agency inaction, the post-liquidation view of a court on the correctness of Commerce's antidumping duty determination can have no effect on the goods already liquidated, thus mooting a challenge to the amount of duty. SKF USA, 512 F.3d at 1332. However, in the case now before us Gerdau is not challenging the antidumping duty at which the ICDAS goods were liquidated. Neither SKF nor Zenith dealt with the question of the effect of a *de minimis* dumping margin on the continued viability of the Antidumping Order in terms of 19 C.F.R. §351.222(b)(2)(i). The answer to this question can have a significant effect on a legal interest distinct from the particular imports subject to the Sixth Review. The effect is not merely theoretical or speculative, because with the Seventh Review the Department of Commerce determined to revoke the 1997 Antidumping Order as it applies to ICDAS as of April 1, 2004, based on ICDAS's satisfaction of three consecutive *de minimis* reviews as provided in §351.222(b)(2)(i). See Seventh Review, 70 Fed. Reg. at 67,666.[3]

We conclude that although Gerdau did not seek to enjoin liquidation of the ICDAS entries subject to the Sixth Review, Gerdau did not thereby lose the right to challenge that Review when its results affected other substantive matters. Gerdau has shown that a

---

[3] As observed supra, the Seventh Review is pending judicial review in the

present, live controversy exists, and that the Court of International Trade can provide meaningful relief. The Court of International Trade therefore erred in dismissing this action as moot.

**B**

In addition to the mootness arguments addressed above, the appellees contend that Gerdau lacks jurisdiction for its claim because Gerdau seeks only to avert revocation of the 1997 Antidumping Order as to ICDAS, an event which could not occur upon completion of the Sixth Review. The government argues that because challenges brought pursuant to 19 U.S.C. §1516a(a)(2)(B)(iii) can pertain to only one review period, Gerdau cannot challenge a possible future revocation in this complaint relating to the Sixth Review. We conclude that Gerdau's claim is not without jurisdictional basis in the statute.

Section 1516a(a)(2)(B)(iii) of title 19 provides for judicial review of "[a] final determination . . . by the administering authority [Commerce] or the [International Trade] Commission under Section 1675 of this title." Section 1675 provides for annual administrative review of an antidumping duty or countervailable subsidy, including any determination upon which an antidumping duty calculation depends. The statute provides that for a 12-month period, upon request, Commerce shall review and determine "the amount of any antidumping duty." 19 U.S.C. 1675(a)(1)(B). Subparagraph (a)(2)(A) of the same section states that for the purposes of such review, Commerce must determine both "the normal value and export price (or constructed export price) of each entry of the subject merchandise" and "the dumping margin for each such entry." The statute states: "The

Court of International Trade.

determination under this paragraph shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." Id. §1675(a)(2)(C). When an action is brought to challenge an administrative review, the challenger may contest "any factual findings or legal conclusions upon which the determination is based." Id. §1516a(a)(2)(A). The dumping margin calculated by Commerce pursuant to 19 U.S.C. 1675(a)(2)(A) is such a factual finding, and is encompassed within the statutory scope of review.

In its complaint, Gerdau alleged errors in Commerce's Sixth Review of ICDAS's dumping margin, and it requested correction. The government and ICDAS argue that review of the dumping margin cannot be separated from the final duty on which the goods were liquidated, which Gerdau agrees cannot be disturbed. However, it does not follow that the calculation of the dumping margin is not reviewable for other purposes, even after liquidation, if the issue has continuing relevance to the statutory purpose of controlling sales at less than fair value. The government suggests that Gerdau seeks to reach beyond the Sixth Review period and that this is contrary to the structure of reviewing 12-month review periods separately. However, Gerdau is here seeking review of only the Sixth Review determinations; that these determinations may have subsequent consequences is a ground supporting review, not defeating it.

ICDAS also contends that Gerdau is improperly relying upon a regulation, 19 C.F.R. §351.222(b)(2)(i), to support jurisdiction, without statutory basis. That is incorrect, for the dumping margin for which Gerdau seeks review is within the class of "factual findings and conclusions of law" reviewable under 19 U.S.C. §1516a(a)(2). The subject matter

jurisdiction of the Court of International Trade is beyond debate. See, e.g., Arbaugh v. Y & H Corp., 546 U.S. 500, 510-11 (2006) (cautioning against confusing subject matter jurisdiction and the merits of the claim).

## CONCLUSION

Gerdau's request for judicial review of the Sixth Review was not rendered moot by liquidation of the entries subject to the Sixth Review, for there remains an issue having ongoing legal consequences: if Commerce erred in calculating a *de minimis* dumping margin for ICDAS in the Sixth Review, this could affect the future lifting of the 1997 Antidumping Order.[4] The Court of International Trade has jurisdiction of the subject matter, in accordance with statute. The dismissal is vacated and the case is remanded for further proceedings.

## VACATED and REMANDED

---

[4] We need not decide in this case whether the Sixth Review determination would be reviewable absent revocation of the antidumping order in the Seventh Review, or whether, if reviewable in such circumstances, the Court of International Trade would be required to stay the proceedings with respect to the Sixth Review pending a revocation determination, in order to determine whether the outcome of the Sixth Review proceeding would have any practical consequences.