Slip Op. 06-4

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                :
OLYMPIA INDUSTRIAL, INC.,       :
                                :
          Plaintiff,            :
                                : Before: Richard K. Eaton, Judge
          v.                    :
                                : Court No. 04-00647
UNITED STATES,                  :
                                :
          Defendant,            :
                                :
     and                        :
                                :
AMES TRUE TEMPER,               :
                                :
          Def.-Intervenor.      :
_____:
```

MEMORANDUM OPINION

[Plaintiff's motion for a preliminary injunction denied]

Dated: January 6, 2006

*Hume & Associates, PC* (*Robert T. Hume, Akil Vohra,* and *Jon C. Cooper*)*,* for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen Carl Tosini*), for defendant.

*Wiley, Rein & Fielding, LLP* (*Charles Owen Verrill, Jr.* and *Timothy C. Brightbill*), for defendant-intervenor.

Eaton, Judge: This matter is before the court on the motion of plaintiff Olympia Industrial, Inc. ("plaintiff" or "Olympia") for a preliminary injunction pursuant to USCIT Rule 65(a). By

its motion, plaintiff seeks "to enjoin the Defendant, the United States, as well as the United States Department of Commerce ("Commerce") . . ., and the United States Customs and Border Protection . . ., from imposing certain cash deposit rates on future imports of the MUTT®, (Multi-Use Tough Tools), a scraper, imported by the Plaintiff, that are included in the antidumping orders on heavy forged hand tools, finished or unfinished, with or without handles, from the People's Republic of China ("HFHTs")." Pl.'s Mot. for Temporary Restraining Order and Prelim. Injunction at 1-2 ("Pl.'s Br."). Plaintiff seeks injunctive relief pending the outcome of this court's review of Commerce's Final Scope Ruling of Dec. 9, 2004. *See* Pub. Doc. 13 (not published in the Federal Register). Defendant United States ("defendant") opposes the motion, as does Defendant-Intervenor Ames True Temper ("Ames").

On October 25, 2005, this court granted plaintiff's request for a temporary restraining order ("TRO"), which enjoined defendant and the United States Department of Customs and Border Protection ("Customs") from "requiring the payment of, or otherwise collecting antidumping cash deposits on any entry of axes/adzes . . . more specifically, of the MUTTs®, . . . at any rate other than what would preserve the status quo, namely ZERO," until October 28, 2005, the date of the evidentiary hearing on

the instant preliminary injunction motion.  *See* Order of

10/25/2005 (emphasis in original).  Following the evidentiary

hearing, the court did not extend the TRO and reserved judgment

on the motion for a preliminary injunction.  Jurisdiction lies

under 19 U.S.C. § 1516a(c)(2) (2000).  For the following reasons,

the court denies plaintiff's motion for a preliminary injunction.


BACKGROUND AND STANDARD OF REVIEW

This motion differs from those most often seen by this Court

because plaintiff does not seek to enjoin liquidation of its

merchandise during the pendency of the underlying action.[1]

Rather, plaintiff asks the court to enjoin the collection of cash

deposits pending this court's review of Commerce's Final Scope

Ruling.  This ruling found plaintiff's product, the MUTT®, was

within the scope of the heavy forged hand tools antidumping duty

---

[1]     Liquidation is the "final computation or ascertainment of the duties or drawback accruing on an entry."  19 C.F.R. § 159.1 (2000); *see also Ammex, Inc. v. United States*, 419 F.3d 1342, 1345 n.1 (Fed. Cir. 2005).  As a general rule, the United States consents to motions to enjoin liquidation of entries covered by antidumping administrative reviews during the pendency of actions.  *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 808 (Fed. Cir. 1983) (noting that, upon Zenith's motion, "[t]he government agreed not to liquidate the subject entries until the trial court could rule on the request for a preliminary injunction.").  Here, if liquidation were enjoined, plaintiff would make the required cash deposits but, should it prevail on the merits, the cash deposits would be returned with interest. *See* 19 U.S.C. § 1505(b) ("The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or *refund* any excess moneys deposited, together with interest thereon . . . .") (emphasis added).

order.  *See* Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China, 70 Fed. Reg. 54,897 (September 19, 2005) ("Final Results").  As a result of that ruling, starting on September 19, 2005, the date of publication of the Final Results in the Federal Register, entries of the MUTTs® have been subject to a cash deposit requirement of 174.5% of their entered value.  The collection of the cash deposit upon Commerce's issuance of its final affirmative determination is authorized by 19 C.F.R. § 351.211(a), which states that "importers no longer may post bonds as security for antidumping . . . duties, but instead must make a cash deposit of estimated duties."  Pursuant to this provision, "when an antidumping order is published [in the Federal Register], importers normally must begin to make a cash deposit of estimated antidumping duties upon the entry of subject merchandise."  19 C.F.R. § 351.215(a).

In seeking the extraordinary remedy of a preliminary injunction,[2] plaintiff claims to have borne the burden of satisfying each part of the familiar four-part test.  That is, to obtain the extraordinary relief of an injunction prior to trial,

---

[2]     This court recognizes that "[a] preliminary injunction is extraordinary relief that is available only on a special showing of need for relief *pendente lite* . . . ."  *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1339 (Fed. Cir. 2005).

the movant carries the burden of establishing: (1) that it will suffer irreparable harm if preliminary relief is not granted; (2) that the public interest would be better served by the relief requested; (3) that the balance of the hardships tips in the movant's favor; and (4) that the movant is likely to succeed on the merits at trial. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)). The court will address each part of the test in turn.

DISCUSSION

I.   Irreparable Harm

Plaintiff claims that it will suffer immediate and irreparable harm if Customs' collection of the cash deposit is not enjoined because of the economic hardship that would result from its payment.[3] *See Shandong Huarong Gen. Group v. United States*, 24 CIT 1286, 1288, 122 F. Supp. 2d 143, 145 (2000). Generally, when analyzing the necessity for a preliminary injunction, "[t]he crucial factor is irreparable injury." *Corus Group PLC v. Bush*, 26 CIT 937, 942, 217 F. Supp. 2d 1347, 1354

_____

[3]   Plaintiff also argues that inclusion of the trademarked MUTT® in the scope of the antidumping duty order results in selective enforcement of the antidumping laws. However, as plaintiff has produced no evidence indicating how such selective enforcement would result in irreparable harm, the court declines to address this issue.

(2002) (citing *Elkem Metals Co. v. United States*, 25 CIT 186, 190, 135 F. Supp. 2d 1324, 1329 (2001)).

At the evidentiary hearing, plaintiff called two witnesses, Randal L. Wright, its Senior Vice President of operations, and John Mackin, Vice President of its lawn and garden division. Each was called to substantiate the claim that the plaintiff was unable to make the required cash deposit and would, therefore, be prevented from importing the MUTT® and having it in its sales inventory. The witnesses were also called to testify as to the economic harm to plaintiff that would result from its inability to advertise and sell the MUTT® and that such harm would be immediate and irreparable. Each witness was subject to cross examination. Mr. Wright testified that Olympia had a total of $62 million of sales for all its products in the fiscal year ending on March 1, 2005, *see* Tr. of Civ. Cause for Prelim. Injunction Hearing ("Tr.") at 75:6-8; and that sales of its lawn and garden tools alone amounted to $15 million. Mr. Wright further testified that, of that amount, garden tool sales alone were about $7.8 million and that MUTT® sales made up approximately $1.7 million of that total. *See* Tr. at 92:1-10. For his part, Mr. Mackin testified that the MUTT® was so important to Olympia's sales that, without it as part of its sales inventory, the company would lose sales of approximately $6

million.  *See* Tr. at 105-06:21-25, 1-6; 109:4-8 (indicating that a customer who purchases the MUTT® will typically purchase a variety of other tools sold by Olympia).

This Court has twice before addressed the question of enjoining the collection of cash deposits.  The first case, *Queen's Flowers de Colombia v. United States*, 20 CIT 1122, 947 F. Supp. 503 (1996), involved twenty Colombian producers/exporters of fresh cut flowers and three related U.S. importers, who sought a preliminary injunction to prevent the collection of cash deposits.  With respect to the issue of whether the plaintiffs faced irreparable harm, the *Queen's Flowers* Court focused on the magnitude[4] and immediacy of plaintiffs' prospective injury.  Specifically, the court noted that

> plaintiffs have established that under the new cash deposit rate of 76.60 percent, eight of the twenty companies will go out of business within periods ranging from a few days to a few weeks. . . .
>
> These companies sell an extremely high percentage of their production of the subject merchandise to the United States (all around 80%) and these sales account for a similarly high percentage of their total sales

---

[4]     While the magnitude of the anticipated harm is not an essential element in most cases dealing with irreparable injury, in *Queen's Flowers*, the Court found that the magnitude of the prospective harm was so great that it could not be repaired by future court action.  *Cf. CPC Int'l, Inc. v. United States*, 19 CIT 978, 980, 896 F. Supp. 1240, 1243 (1995) ("What is critical is not the magnitude of the injury, but rather its immediacy and the inadequacy of future corrective relief.") (citations omitted) (internal quotation marks omitted).

revenue.  Also, the product they sell is a perishable good tailored to the unique demands of the United States flower market; alternative markets do not exist in which the companies can sell their excess capacity to stay in business.  The new deposit rate is also very high, relative to the rates set . . . in an industry that is so competitive.  Thus, collection of the 76.60 deposit rate will force each of the eight companies out of business within an extremely short time period, eliminating their opportunity for future corrective judicial relief.

*Id.* at 1125-26, 947 F. Supp. at 506-07 (footnotes omitted).

Based on these findings, the Court concluded that eight of the plaintiffs had satisfied the requirement that they would suffer irreparable harm in the absence of an injunction.  In reaching its conclusion, the Court relied on evidence establishing that paying the antidumping duty deposits would drive the eight flower producers/exporters out of business in an extremely short period of time.  *Id.* at 1126, 947 F. Supp. at 507 (stating that the remaining plaintiffs failed to "establish the same level of immediacy of harm that the other eight companies [had]: immediate extinction.").  The court then analyzed the remaining three factors and granted plaintiffs their requested relief while "limiting the scope of the injunction affecting the cash deposit rates to the eight companies that established a risk of immediate economic harm . . . ."  *Id.* at 1128, 947 F. Supp. at 509.

The second case in which this Court addressed the issue at bar is *Corus Group PLC v. Bush*, 26 CIT 937, 217 F. Supp. 2d 1347.

In that case, the plaintiff sought a preliminary injunction to enjoin the collection of additional duties imposed on its products pursuant to a Presidential Proclamation. *Id*. at 937, 217 F. Supp. 2d at 1349. At an evidentiary hearing in that case, two witnesses testified that if the duties were collected,

> the [plaintiff's] Norway factory was not sufficiently profitable to attract investment for upgrades that might allow it to produce [new products]. Both witnesses [also] testified that, as a result, the Bergen Plant would have to raise prices or absorb the tariffs. . . . [Plaintiff] argues that sound business principles would require it to close the plant rather than operate at a loss.

*Id*. at 944, 217 F. Supp. 2d at 1355. In denying petitioner's motion for a preliminary injunction, the Court said:

> Every increase in duty rate will necessarily have an adverse affect on foreign producers and importers. That is particularly true with regards to the 30% increase imposed under the safeguard provision. If the court were to find irreparable harm under these facts, the court would likely be required to do so in any challenge to a duty increase because every plaintiff could argue that increased tariffs would cause revenue shortfalls possibly resulting in either operating at a loss or plant closure at some future date. On balance, [plaintiff] has shown that it may suffer an adverse economic impact, but to find irreparable harm here would effectively create a *per se* irreparable harm rule in similar challenges–a result likely contrary to the extraordinary nature of the remedy.

*Id*. (citing *Am. Spring Wire Corp. v. United States*, 7 CIT 2, 6, 578 F. Supp. 1405, 1408 (1984)). Ultimately, the Court found that the plaintiff had not produced sufficient evidence demonstrating that its factory was "in danger of imminent closure." *Id*. In other words, despite having "arguably

presented evidence of economic injury," the Court found that plaintiff's evidence failed to exhibit the magnitude and immediacy of injury necessary for finding irreparable harm. *Id.*

While plaintiff in the instant case has demonstrated that it will suffer some economic loss should the demand for cash deposits be enforced, it has not demonstrated either the immediacy or magnitude of the injury petitioners showed in *Queen's Flowers*. Indeed, plaintiff has failed to produce evidence equal to that found wanting in *Corus Group*. First, plaintiff argues that it will be difficult or impossible for it to make the cash deposits because

> we have a weak company that's trying to emerge from a weak position and cash flow is really important to the company at this time to try to maintain [its] operations. The loss of what amounts to over $1 million of cash deposit requirements would make a major difference in [the] cash flow for the company . . . ."

Tr. at 20-21:23-25, 1-3. Thus, plaintiff argues that, as it does not have sufficient funds to make the cash deposit, it will not be able to import the MUTT®.[5] Second, plaintiff argues that should it be unable to import the MUTT®, it will suffer irreparable injury. This argument is difficult to credit. Even if the court were to accept plaintiff's claim that it would lose all of its garden tool sales without the MUTT® in its sales

---

[5] Olympia makes no argument that making the cash deposit will render it insolvent or force it out of business.

inventory, this would still leave over 90% of its sales intact. Thus, plaintiff has made no showing that, absent the ability to sell the MUTT®, it will immediately fail. Accordingly, the court finds no evidence indicating that plaintiff will face immediate and irreparable injury should the requirement of the cash deposit remain in place.

II. Public Interest

Although the "[f]ailure of an applicant to bear its burden of persuasion on irreparable harm is ground to deny a preliminary injunction [without] conclusively determin[ing] the other criteria," a brief discussion of the remaining three parts of the four-part test is nonetheless useful. *Bomont Indus. v. United States*, 10 CIT 431, 437, 638 F. Supp. 1334, 1340 (1986); *see also Corus Group*, 26 CIT at 942, 217 F. Supp. 2d at 1354. In arguing that the grant of a preliminary injunction will serve the public interest, plaintiff insists:

> It is well settled that the public interest is served by "ensuring that [Commerce] complies with the law, and interprets and applies [the] trade statutes fairly." *See, e.g.,* Ugine-Savoie Imphy v. United States, 24 CIT at 1252, 121 F. Supp. 2d at 690. In addition, the "public interest is best served when all parties can obtain effective judicial review." Int'l Brotherhood of Elec. Workers v. United States, Slip Op. 05-11 (Jan. 27, 2005) at 16, 2005 Ct. Intl. Trade LEXIS 10, *24, 25 (citations omitted).
>
> In the case at bar, the public interest will be served by this Court's issuance of a temporary restraining order and a preliminary injunction. A temporary

restraining order and a preliminary injunction will permit this Court, pursuant to 19 U.S.C. § 1516a(b)(1)(B), to review Commerce's decision to place the MUTT® within the scope of the HFHTs order and to ensure that Commerce's final action in determining the proper antidumping duties and setting cash deposit rates is supported by substantial evidence, and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Pl.'s Br. at 6-7. Despite plaintiff's argument, the public interest in ensuring that Commerce complies with the trade laws through judicial review would not be advanced by the issuance of its proposed injunction. This court will endeavor to ensure these ends whether an injunction is in place or not. Therefore, plaintiff's argument with respect to the public interest is unconvincing.

The defendant, on the other hand, has a substantial public interest claim. Defendant contends that

[Customs] is directed to protect the revenue of the United States. See generally Carolina Tobacco Co., Inc. v. United States, 402 F.3d 1345 (Fed. Cir. 2005). If an importer does not pay duties upon each entry at the time the entry is made, the importer must post bonds that provide security for the duties owed. 19 U.S.C. § 1623. However, the antidumping duty statute requires that importers post cash deposits of estimated antidumping duties. 19 U.S.C. §§ 1675(a)(1) and 1675(a)(2)(B)(iii).

Accordingly, [in the event an injunction is granted], the revenue would be left unprotected, in clear violation of the express will of Congress.

Def.'s Resp. in Opp'n. to Pl.'s Mot. for a TRO and Prelim. Injunction ("Def.'s Resp.") at 9. In other words, if a

preliminary injunction is granted, the public's interest in collecting antidumping revenue may be placed in the kind of jeopardy both the statutes and the regulations are designed to prevent.  This is a more than theoretical possibility.  Plaintiff has indicated that in the event the court grants the proposed injunction, but defendant prevails on the merits, it will be unable to pay the duties imposed on its merchandise that has already entered the stream of commerce.[6]  *See* Tr. at 33-34.  This being the case, defendant, not plaintiff, has demonstrated that the public interest would be better served by the requirement of the cash deposit remaining undisturbed.

III. Balance of Hardships

"An inquiry into the balance of hardships requires this Court to determine which party will suffer the greatest adverse effects as a result of the grant or denial of the preliminary injunction."  *Ugine-Savoie Imphy v. United States*, 24 CIT 1246, 1250, 121 F. Supp. 2d 684, 688 (2000).  Having previously determined that plaintiff will not be irreparably harmed absent an injunction does not settle this part of the four-part test.  While not reaching the level of irreparable harm, the court finds that being unable to import the MUTT® would amount to a hardship

---

[6]     Counsel suggested that the duties might be satisfied through Commerce's seizure of the "many other goods coming in from China for Olympia . . . ."  Tr. at 34:24.

on plaintiff.  In addition, however, the court finds that defendant faces the possibility of enduring a significant hardship of its own should an injunction be granted, i.e., the previously noted prospect of lost revenue.  Here, because both parties face hardship should their arguments with respect to the issuance of an injunction not succeed, the balance of hardships does not aid plaintiff.

## IV. Likelihood of Success on the Merits

To this point, plaintiff has not demonstrated immediate and irreparable harm and does not receive assistance from either the public interest or balance of hardship factors.  With respect to the likelihood that plaintiff will prevail on its claims in the underlying action, the court finds that both sides have substantial cases.  In support of its argument that success on the merits favors the granting of its motion, plaintiff says:

> [Olympia] is likely to succeed on the merits of this case and has raised substantial questions of law. Specifically, there is compelling evidence on the record that the Plaintiff's manufacturing process used in creating the MUTTs®, roll forging, is not hot forging, as specifically stated in the HFHTs order and thus the MUTTs® should not be included within the scope.

> [Further], the overriding purpose of the MUTT® is its use as a scraper to facilitate tasks such as scraping, ice breaking, lot clearance, trenching, shingle removal, tile removal, carpet and floor removal, removing ice from a driveway and paint removal. The incidental use of a scraper as a cutting tool does not override the main function of the tool as a scraper,

> and does not classify the product as having a hewing
> function.  Moreover, the MUTT® is advertised and
> displayed in a manner different from the tools found in
> the HFHT order.

Pl.'s Br. at 5 (emphasis omitted) (footnotes omitted) (internal
quotation marks omitted).

For its part, defendant relies generally on its brief in the
underlying action, which it incorporates by reference.  An
examination of that brief confirms that defendant has a
substantial and serious case.  In particular, defendant makes
strong arguments both with respect to the kind of forging used to
produce the MUTT® and as to its use a hewing tool.  *See* Def.'s
Resp. to Pl.'s Mot. for J. Upon the Agency Rec. at 10-11 ("[T]he
forging process described in the order is illustrative, not
exclusive. . . .  The critical facts here are that MUTTs® are
forged, and the orders cover heavy forged hand tools."); *see also*
*id.* at 12 ("Commerce correctly examined whether MUTTs® are hewing
tools similar to axes or adzes.") (emphasis omitted).

Based on the foregoing, the court finds that both parties
have presented strong cases,[7] and, thus, plaintiff has failed to

---

[7]    As to the exact showing necessary to have this factor
favor plaintiff, the present state of the law is unclear.  *See*
*U.S. Ass'n of Importers of Textile and Apparel v. United States*
*Dep't of Commerce*, 413 F.3d 1344, 1347 (Fed. Cir. 2005) (finding
that, because plaintiff had not even met a minimal threshold for
(continued...)

demonstrate that it is likely to succeed on the merits at trial.

Therefore, this part of the four-part test does not compel the

court to find that Olympia is entitled to injunctive relief.


CONCLUSION

For the reasons stated above, the court denies plaintiff's

motion for a preliminary injunction.  Judgment shall be entered

accordingly.


<u>    /s/ Richard K. Eaton    </u>
Richard K. Eaton


Dated:     January 6, 2006
           New York, New York

---

[7](...continued)
establishing likelihood of success on the merits, "we need not,
and thus do not, resolve the dispute over the legal standard
applicable in the Federal Circuit . . . .").