# United States Court of Appeals for the Federal Circuit

2009-1471

CLEARPLAY, INC.,

Plaintiff-Appellee,

v.

MAX ABECASSIS and NISSIM CORP,

Defendants-Appellants.

David L. Mortensen, Stoel Rives LLP, of Salt Lake City, Utah, argued for plaintiff-appellee. With him on the brief was David J. Jordan. Of counsel on the brief was Thomas J. Meeks, Carlton Fields, of Miami, Florida.

John C. Carey, Carey Rodriguez Greenberg & Paul, LLP, of Miami, Florida, argued for defendants-appellants. With him on the brief was Allison J. Cammack.

Appealed from: United States District Court for the Southern District of Florida

Judge Paul C. Huck

# United States Court of Appeals for the Federal Circuit

2009-1471

CLEARPLAY, INC.,

Plaintiff-Appellee,

v.

MAX ABECASSIS and NISSIM CORP.,

Defendants-Appellants.

Appeal from the United States District Court for the Southern District of Florida in case no. 07-CV-81170, Judge Paul C. Huck.

———————————————

DECIDED: April 21, 2010

———————————————

Before BRYSON, ARCHER, and PROST, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

Nissim Corp. and Max Abecassis (collectively, "Nissim") appeal a May 29, 2009, order of the United States District Court for the Southern District of Florida granting a preliminary injunction to ClearPlay, Inc. At the outset, this case requires us to determine whether we have appellate jurisdiction over the underlying action, which relates to a dispute stemming from the parties' patent license agreement. We hold that we lack jurisdiction over this appeal and therefore transfer the case to the United States Court of Appeals for the Eleventh Circuit.

I

The license agreement, executed in December 2005, settled a patent infringement action that Nissim had brought against ClearPlay. Nissim had accused ClearPlay of infringing its patents relating to systems for filtering objectionable content from certain video media, such as DVDs. As part of their settlement of the lawsuit, the parties entered into a license agreement that allowed ClearPlay to distribute its accused products upon payment of royalties to Nissim. Shortly after the settlement and license agreement were entered, however, Nissim claimed that ClearPlay had violated the terms of the agreement, and in June 2007 Nissim filed a motion to enforce the agreement. Nissim filed the motion in the same court in which the patent action had been brought. While that motion was pending, Nissim informed several retailers who were selling ClearPlay's products that ClearPlay's devices were not licensed and that the retailers' continuing sale of those products could constitute patent infringement.

In response, ClearPlay brought this action in December 2007 in the same district court that had entertained the patent infringement action. Citing diversity of citizenship as a jurisdictional basis, ClearPlay accused Nissim of tortious interference with a contractual relationship, tortious interference with potential advantageous business relationships, breach of the license agreement, breach of the covenant of good faith and fair dealing, and violation of Florida's Deceptive and Unfair Trade Practices Act.

Meanwhile, in the patent case, the trial court assigned to a special master the task of determining whether, as alleged by Nissim, ClearPlay had breached the license agreement. In early 2009, the special master recommended finding that ClearPlay had substantially complied with the agreement and was not in breach. The district court,

having previously held that the license agreement was valid and enforceable, adopted the special master's recommendation on March 31, 2009, and dismissed Nissim's motion for relief in the patent case. Nissim took an appeal from that decision. That appeal is now pending before a panel of this court as No. 2009-1327.

Shortly after the district court's order denying Nissim's motion, Nissim informed ClearPlay of its position that, notwithstanding the terms of the district court's order, the effect of the order was to terminate the license agreement. Nissim pointed to section 12.3 of the license agreement, which provides that prior versions of the agreement "shall not be relied upon for interpretation of the terms and conditions herein." Nissim's theory was that the special master had treated that provision as invalid or unenforceable by relying in part on the negotiating history of the agreement as an aid to interpreting the agreement's terms. Nissim argued that, because the special master had relied on the parties' negotiating history and the district court had adopted the special master's recommendation, the effect of the district court's ruling was likewise to invalidate or deem unenforceable section 12.3 of the agreement. Nissim then pointed to section 12.5 of the agreement, which provides that each of the terms of the agreement is material and that if any term is "deemed invalid, illegal or unenforceable" and is not amended by agreement of the parties, the license agreement shall terminate 60 days "following such term or provision becoming or being deemed invalid, illegal, or unenforceable." That provision was triggered, according to Nissim, even though the district court had explicitly held that the agreement was still valid and in effect. As a consequence, Nissim advised ClearPlay that it would regard the license agreement as terminated as of May 30, 2009, 60 days after the district court's decision.

On May 22, 2009, ClearPlay sought a preliminary injunction in its state law action seeking to bar Nissim from breaching the license agreement by denying its validity and enforceability. The district court agreed with ClearPlay that Nissim was wrong to interpret the court's March 31 order as effectively terminating the license agreement. Instead, the court held that the agreement was valid and that ClearPlay was in substantial compliance with its terms. The court then entered a preliminary injunction against Nissim, ordering that neither Nissim nor its agents shall "suggest or state to potential retailers, purchasers, or manufacturers of ClearPlay's products that this Court has held that the License Agreement between ClearPlay and Nissim is terminated pursuant to Section 12.5 of the License Agreement." Nissim took this appeal from the district court's preliminary injunction order.

ClearPlay first argues that this court lacks jurisdiction over the appeal and that the appeal belongs, instead, in the Eleventh Circuit. On the jurisdictional issue, Nissim responds that this court has jurisdiction over the appeal because the dispute between the parties necessarily raises issues of patent law.

As to the merits, ClearPlay argues that the trial court correctly held that the agreement had not been terminated and that the court properly entered a preliminary injunction against Nissim to bar it from making contrary representations about the court's ruling to ClearPlay's business partners. For its part, Nissim reasserts its argument that the district court, despite stating that the license agreement remained valid and in force, actually precipitated the termination of the agreement by the way it resolved the dispute over the issue of breach. Nissim also contends that it was an abuse of discretion for the district court to issue the preliminary injunction.

II

We agree with ClearPlay that we lack jurisdiction over this appeal, and we order that the appeal be transferred to the Eleventh Circuit.

This court's jurisdiction over appeals from decisions of United States district courts is based on 28 U.S.C. § 1295(a). Section 1295(a)(1) provides that this court has jurisdiction over an appeal from a final decision of a district court "if the jurisdiction of that court was based, in whole or in part, on section 1338" of title 28. Section 1338, in turn, gives district courts original jurisdiction of "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a).

In Christianson v. Colt Industries Operating Corp., 486 U.S. 800 (1988), the Supreme Court addressed in detail the meaning of the term "arising under" in the context of section 1338. The Court stated that in order to demonstrate that a case is one "arising under" patent law, the plaintiff must "set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." Id. at 807-08, quoting Pratt v. Paris Gas Light & Coke Co., 168 U.S. 255, 259 (1897). Following its precedents under other jurisdictional statutes containing similar language, the Court explained that section 1338 jurisdiction extends

> only to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

Christianson, 486 U.S. at 809.

Significantly, the Court explained that, to establish section 1338 jurisdiction, it is not necessarily sufficient "that a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential." 486 U.S. at 810. If there are "'reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks' . . . then the claim does not 'arise under' those laws." Id. Thus, the Court concluded, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." Id. We have consistently applied those governing principles to determine whether particular claims, including state law claims, can be said to arise under section 1338. See, e.g., Davis v. Brouse McDowell, L.P.A., 596 F.3d 1355, 1359-62 (Fed. Cir. 2010); Thompson v. Microsoft Corp., 471 F.3d 1288, 1291-92 (Fed. Cir. 2006); Uroplasty, Inc. v. Advanced Uroscience, Inc., 239 F.3d 1277, 1279-80 (Fed. Cir. 2001); Hunter Douglas, Inc. v. Harmonic Design, Inc. 153 F.3d 1318, 1325, 1328-29 (Fed. Cir. 1998).

The first part of the Christianson test is plainly not satisfied in this case. ClearPlay's second amended complaint, which was before the court when the preliminary injunction order was entered and appealed from, is entirely devoted to state law causes of action. Thus, federal patent law does not "create[] the cause of action" as to any of the claims in the complaint.[1]

---

[1]    Nissim asserts that the doctrine of complete preemption converts ClearPlay's state-law claims into federal causes of action. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-67 (1987) (noting that in rare instances federal policy is so powerful as to displace entirely any state cause of action and convert it into an action arising under federal law). In Hunter Douglas, however, we held that claims like the ones in this case may implicate conflict preemption but do not give rise to complete preemption that

Applying the second part of the Christianson test is more difficult, as is typically the case. In order for this court to have jurisdiction under that part of the test, at least one of the plaintiff's claims must necessarily turn on an issue of federal patent law. That is, if there is a theory of liability for each of the asserted claims for which it is not necessary to resolve an issue of federal patent law, the district court lacked jurisdiction under section 1338, and we correspondingly lack jurisdiction under section 1295.

This is such a case. ClearPlay's second amended complaint raises six state law claims: (1) tortious interference with a contractual relationship between ClearPlay and Target by, inter alia, "falsely stating to Target that the ClearPlay DVD players and related filtering technology[] were not covered by the License Agreement and by threatening to sue Target if Target did not immediately cease sales of the ClearPlay DVD players"; (2) tortious interference with a contractual relationship between ClearPlay and Best Buy based on similar alleged conduct; (3) tortious interference with potentially advantageous business relationships between ClearPlay and its clients through similar conduct directed at Target, Best Buy, and Samsung, and by "publishing false press releases on [Nissim's] website stating that ClearPlay was engaged in the sale and distribution of DVD players and/or related filtering technology which are not covered by a Nissim license"; (4) breach of the license agreement by interfering with ClearPlay's business operations through Nissim's communications with Target, Best Buy, and

---

converts the state law claim into a federal claim. 153 F.3d at 1332-37; see also Dow Chem. Co. v. Exxon Corp., 139 F.3d 1470, 1473-79 (Fed. Cir. 1998) (no complete preemption of a state law cause of action alleging intentional interference with contractual relations, even though the action implicated the patent law issue of inequitable conduct). Nonetheless, to the extent that the principles of federal patent law apply to this case and conflict with relevant state tort law, those principles would provide the rules of decision as a matter of conflict preemption, regardless of the forum.

Samsung; (5) breach of the covenant of good faith and fair dealing through the previously alleged conduct; and (6) violation of Florida's Deceptive and Unfair Trade Practices Act by entering into the license agreement in bad faith, seeking to disrupt ClearPlay's relationships with its business partners, and threatening its business partners with patent infringement suits.

While it is true that questions of patent infringement are addressed at various points in the communications that are at issue in ClearPlay's complaint, and while it is possible that patent law issues could arise in the course of litigating any one of ClearPlay's claims, it is equally clear that none of those claims necessarily turns on an issue of patent law. That is, in the case of each asserted claim, there is at least one theory of relief that would not require the resolution of a patent law issue.

The breach of contract claim and the related claim of breach of the covenant of good faith and fair dealing plainly do not require resolution of a patent law issue. Each of those claims is directed to Nissim's conduct with respect to the parties' respective obligations under the license agreement. ClearPlay alleges, inter alia, that Nissim has failed to submit disputes under the agreement to a special master, as required by the agreement; that it has not dealt with ClearPlay in good faith with respect to the provisions of the agreement; and that it has failed to comply with the "most favored nations" clause in the agreement by refusing to provide ClearPlay with copies of DVD-Device license agreements that Nissim has entered into with other parties. None of those theories of recovery would require a court to resolve a patent law issue.

Similarly, each of the three tortious interference claims alleges at least one theory of relief that would not require the court to address any patent law issue. For

example, in each of those claims ClearPlay asserts that Nissim falsely stated that the ClearPlay DVD players and related filtering technology were not covered by the license agreement. Resolution of that issue would not require the court to address any patent law question; it would require only that the court consider the provisions of the license agreement in light of the DVD players and filters sold by ClearPlay. Nissim argues that its allegedly false assertions that ClearPlay's products are unlicensed would constitute meaningful threats only if the products infringed Nissim's patent. That may be true, but it does not mean that any issue of infringement must be decided in order to determine whether Nissim has engaged in tortious behavior. ClearPlay could prevail on its claims by showing that the assertions that ClearPlay's products are unlicensed were false, without regard to whether sale of the products, if unlicensed, would infringe Nissim's patents. If ClearPlay could prove that its devices, even absent a license, did not infringe, that would be another arrow in its quiver, but even assuming the devices would infringe if unlicensed, ClearPlay would still have viable theories of liability under its complaint. In particular, if ClearPlay can prove its allegations that Nissim has falsely represented that ClearPlay's products are unlicensed, those representations could be actionable regardless of whether the products fall within the scope of Nissim's patent.

Finally, the claim of violation of Florida's Deceptive and Unfair Trade Practices Act also asserts theories of liability that do not require resolution of a patent law issue. That count of the complaint alleges that Nissim entered into the license agreement in bad faith with no intention to comply with its obligations under the agreement; that it has failed to submit any disputes arising from the agreement to the special master, as required by the agreement; and that it has interfered with relationships between

ClearPlay and its customers by threatening infringement suits against those customers even "when Nissim was aware of and knew that the ClearPlay DVD players sold at Best Buy and at Target were not sold in breach of the parties' License Agreement."

At oral argument, counsel for Nissim repeatedly sounded the theme that, at bottom, the dispute between the parties in this case is founded on allegations of patent infringement and that all of the claims in ClearPlay's complaint stem ultimately from that underlying dispute. While it may be true, in a holistic sense, that the dispute between these parties is patent-based, the Supreme Court's decision in Christianson embraces a distinctly non-holistic approach to "arising under" jurisdiction. It is not enough that patent law issues are in the air. Instead, resolution of a patent law issue must be necessary to every theory of relief under at least one claim in the plaintiff's complaint. And that is not so in this case.

As ClearPlay points out, this case is quite similar to Christianson in several respects. In Christianson, the plaintiff's complaint alleged violations of federal antitrust laws and a state law regarding tortious interference with business relationships. The Supreme Court accepted, for purposes of argument, that a patent law issue was an "essential element" of one theory of liability under each of the plaintiff's claims. Nonetheless, the Court observed that as to each asserted claim there was at least one theory of recovery that did not require the resolution of a patent law question. As the Court explained, there were "reasons completely unrelated to the provisions and purposes of federal patent law why petitioners may or may not be entitled to the relief [they] seek." Christianson, 486 U.S. at 812. The Court stated that the appearance in the complaint of an alternative, non-patent theory with respect to each claim "compels

the conclusion" that the claims "do[] not 'arise under' patent law." Id. at 813. The same analysis applies to each of the state law claims set forth in the complaint in this case.[2]

In sum, we have no jurisdiction over this appeal. Because it appears that the district court had jurisdiction over this case based on diversity of citizenship, and because an appeal to the Eleventh Circuit would have been proper when the appeal was taken to this court, we conclude that it is in the interest of justice to transfer the case to the Eleventh Circuit. See 28 U.S.C. § 1631.

Costs are taxed against the appellants.

TRANSFERRED.

---

[2] Nissim argues briefly that this court has jurisdiction over this appeal because this case has been consolidated in the district court with a pending patent infringement action brought by Nissim, No. 08-CV-80535. In fact, although the two cases have been set for trial together, they have not been formally consolidated. The court's coordinated scheduling of discovery and trial in the two cases does not convert them into a single action for purposes of this court's jurisdiction.