STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
DOCKET NO. BCD-CV-15-064

PURITAN MEDICAL PRODUCTS
COMPANY LLC,

           Plaintiff

v.

COPAN ITALIA S.p.A.,

           Defendant.

)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

Before the Court is Copans Motion for Summary Judgment.

I.     Background

Both Plaintiff Puritan Medical Products Company LLC ("Puritan") and Defendant Copan Italia S.p.A. ("Copan") produce flocked swabs that are sold throughout the world. Copan currently owns eleven valid patents relating to its flocked swabs and flocked swab technology throughout the world. Supp. S.M.F. ¶ 7. Copan has been developing and producing flocked swabs since 2003. Supp. S.M.F. ¶ 8. Copan maintains facilities in Italy, the United States, and China and employs 450 people worldwide. Supp. S.M.F. ¶ 8. Copan "manufactures, markets and sells its flocked swabs and produces up to 600,000 flocked swabs a day, totaling over 50 million flocked swabs in 2015." Supp. S.M.F. ¶ 9.

Puritan is a manufacturer of biological collection devices employing 250 people in Guilford, Maine. Add. S.M.F. ¶ 1. Puritan began manufacturing, marketing, and selling flocked swabs in 2010-2011. Supp. S.M.F. ¶ 13. Puritan sells its flocked swabs in countries where Copan holds flocked swab patents, including the United States and

1

several European countries. Supp. S.M.F. ¶ 15. Puritan claims that its flocked swabs are different from the flocked swabs patented by Copan because they are made with bicomponent fibers, because some Puritan swabs have fibers with splayed ends ("Hydra" swabs"), because Puritan swabs have a different fiber density ("Dtex" count), and because of the absence of an ordered arrangement of the fibers perpendicular to the tip of the rod. Add. S.M.F. ¶ 11. Copan denies that the Puritan swabs are sufficiently different from the Copan swabs and further argues that the specifics of the swabs and their patents are outside of the Court's jurisdiction. Reply to Add. S.M.F. ¶ 11. Puritan and Copan compete in the specialized field of flocked swabs. Supp. S.M.F. ¶ 12.

In 2010, Puritan began applying for patents relating to flocked swabs. Supp. S.M.F. ¶ 16. Puritan published, and continues to publish, to potential customers that Puritan's flocked swab products do not infringe upon Copan's patents. Supp. S.M.F. ¶ 17. Around 2011, Copan contends that it began suspecting that at least some of Puritan's flocked swab products infringed upon Copan's European and U.S. patents. Supp. S.M.F. ¶ 19. Puritan contests this belief, arguing that Copan could not have reasonably believed that Puritan's swabs infringed upon Copan's patents. Opp. S.M.F. ¶ 19. The founder of Copan, Daniele Triva, commissioned external testing of Puritan's products in or around 2011. Supp. S.M.F. ¶ 20. The parties dispute the exact finding of the testing, but Puritan admits that Fumagalli, who tested the products, found that Copan was "on the right side." Opp. S.M.F. ¶ 20.

Copan alleges that it conducted its own internal examinations of Puritan's flocked swabs in comparison to Copan's. Supp. S.M.F. ¶ 21. Copan reviewed Puritan's flocked swab patents and monitored public communications made by Puritan including

2

photographs and descriptions of how they were made. Supp. S.M.F. ¶ 22. Therefore Copan asserts that Copan believed that Puritan's flocked swabs likely infringed upon Copan's patents. Supp. S.M.F. ¶ 23. Again, Puritan claims that any such belief would be unreasonable. Opp. S.M.F. ¶ 23.

On June 8, 2011, Copan's attorney sent a letter to Puritan's distributor, stating Copan's belief that Puritan was selling flocked swabs that infringed upon Copan's flocked swab patents. Supp. S.M.F. ¶ 26. Copan alleges that such letters are Copan's practice and that Copan confirmed the terms of its patents and the likelihood of patent infringement prior to sending the letter. Supp. S.M.F. ¶¶ 25 & 27. Copan filed a claim against Puritan for infringement in Germany where Copan held several German Utility Models (Nos. 202004021787.2 (DE '787); 202004021930.1 (DE '930); 202004021932.8 (DE '932)), which branch off from its European patent, EP 1608268. Supp. S.M.F. ¶ 28.

Copan contends that the infringement action was brought in part to allow Copan the opportunity to test Puritan's flocked swabs at a microscopic, chemical, and physical level. Supp. S.M.F. ¶ 29. Puritan alleges that such testing could have been performed at any time because the Puritan products were available for purchase on the European markets. Opp. S.M.F. ¶ 30. Testing was performed by two experts: Dr. Manfred Pinnow and Dr. Francesco Gatti. Supp. S.M.F. ¶ 30. Copan alleges that the experts' findings confirmed that the fiber bundles of Puritan's HydraFlock® flocked swabs fell within the Dtex range claimed in some Copan patents. Supp. S.M.F. ¶ 31. Puritan denies that the experts' findings confirmed any infringement. Opp. S.M.F. ¶ 31. On July 22, 2014, Copan won an infringement case against Puritan on one of its German Utility Modes. Supp. S.M.F. ¶ 32. On June 3, 2015, Copan's European patent EP 268 was upheld over

3

opposition. Supp. S.M.F. ¶ 32. On June 9, 2015, another one of Copan's German Utility Models was confirmed as valid. Supp. S.M.F. ¶ 32.

In the spring of 2015, Copan learned that Puritan flocked swabs may have been offered as part of a bid by a distributor, GE Healthcare Life Sciences ("GE Healthcare"), for a tender to supply the French Gendarmerie with forensic products. Supp. S.M.F. ¶ 36. On June 15, 2015, Lorenzo Fumagalli, Copan's Intellectual Property Manager, sent a letter to GE Healthcare stating that the sale of the Puritan flocked swabs may infringe upon Copan's patents. Supp. S.M.F. ¶ 37. He had also sent a similar letter to the French Gendarmerie on May 8, 2015. Add. S.M.F. ¶ 24. The letter included the patent numbers that Copan believed Puritan was infringing, the patent holder's name and address, and allegations about how the patents were potentially being infringed. Supp. S.M.F. ¶ 38. The letter to GE Healthcare did not demand payment of a license fee. Supp. S.M.F. ¶ 41. GE Healthcare's offer was not accepted by the French Gendarmerie. Add. S.M.F. ¶ 22. Copan has informed some of Puritan's other distributors and customers that it believed that Puritan's flocked swabs likely infringed certain Copan permits. Add. S.M.F. ¶ 18. Copan contends that it only did so after analysis of Puritan's swabs with regards to Copan's patents. Reply to Add. S.M.F. ¶ 18.

II.    Discussion

    a.   Jurisdiction

In order to make any determination as to the merits of the current action, the Court must have jurisdiction over the subject matter. Federal district courts have exclusive original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The area of patent law has long been

4

governed by federal law, and therefore patent law is subject to the exclusive jurisdiction of the Federal courts. *See* 28 U.S.C. § 1338. However, not all legal actions involving patents present questions of patent law. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807-808 (U.S. 1988). The parties present to the Court the legal question of whether the current dispute is one of federal law, and therefore subject to federal jurisdiction, or a question of state law to be determined by this Court.

In order to be a question of patent law, the cause of action being asserted must have been created by federal patent law, or the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 808. Because Puritan asserts only causes of action arising from Maine state statute, the causes of action were not "created" by federal patent law. The Court must therefore determine whether Puritan's right to relief depends upon resolution of a federal patent law question.

While it is possible for a case arising under a state law to be preempted by federal patent law, it is rare. "It is not enough that patent law issues are in the air. Instead, resolution of a patent law issue must be necessary to every theory of relief under at least one claim in the plaintiff's complaint." *ClearPlay, Inc. v. Max Abecassis*, 602 F.3d 1364, 1369(Fed. Cir. 2010). "[A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Christianson*, 486 U.S. at 810.

In order to prevail on a claim for bad faith assertion of patent infringement pursuant to 14 M.R.S. § 8701, the plaintiff must show that the defendant made a bad faith assertion of patent infringement against the plaintiff. 14 M.R.S. § 8701. The statute delineates a number of factors for the Court to consider in determining whether an

5

assertion of patent infringement was made in bad faith. No element of the claim or element delineated by statute requires the Court to determine a question of federal patent law. Therefore, pursuant to the test presented in *Christianson*, Puritan's claim is not preempted by federal patent law. This Court retains subject matter jurisdiction over Plaintiff's claim.

      b.  14 M.R.S. § 8701 - Actions for Bad Faith Assertion of Patent Infringement

Copan has moved the Court for summary judgment. Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Id.* (citations omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

The Court finds that there is no genuine issue of material fact and Copan is entitled to summary judgment on Puritan's claim for bad faith assertion of patent infringement. In order to prove its case, Puritan would need to show that Copan "has made a bad faith assertion of patent infringement." 14 M.R.S. § 8701(3). The statute sets out a number of factors that the Court may look to in determining whether the assertion of patent infringement amounts to bad faith:

1) The demand letter does not contain:
    (a) The patent number;

6

(b) The name and address of the patent owner or owners and assignee or assignees, if any; or

(c) Factual allegations concerning the specific areas in which the target's products, services or technology infringed the patent or are covered by the claims in the patent;

(2) The demand letter does not contain the information described in subparagraph (1), the target requested the information and the person did not provide the information within a reasonable period of time;

(3) Prior to sending the demand letter, the person failed to conduct an analysis comparing the claims in the patent to the target's products, services or technology or an analysis was done but does not identify specific areas in which the products, services or technology are covered by the claims in the patent;

(4) The demand letter includes a demand for payment of a license fee or a response within an unreasonably short period of time;

(5) The person offered to license the patent for an amount that is not based on a reasonable estimate of the value of the license;

(6) The person knew or should have known that the assertion of patent infringement is meritless;

(7) The assertion of patent infringement is deceptive; and

(8) The person or a subsidiary or affiliate of the person previously filed or threatened to file a lawsuit based on the same or similar claim of patent infringement and:

(a) Those threats or lawsuits lacked the information described in subparagraph (1); or

(b) The person attempted to enforce the claim of patent infringement in litigation and a court found the claim to be meritless;

14 M.R.S. § 8701(3)(A). Additionally, the statute sets out factors that the Court may look

to that tend to show that the assertion of patent infringement was not made in bad faith:

(1) The demand letter contains the information described in paragraph A, subparagraph (1);

(2) The demand letter does not contain the information described in paragraph A, subparagraph (1), the target requested the information and the person provided the information within a reasonable period of time;

(3) The person engaged in a good faith effort to establish that the target infringed the patent and to negotiate an appropriate remedy;

(4) The person made a substantial investment in the use of the patent or in the production or sale of a product or item covered by the patent;

(5) The person is:

(a) The inventor or joint inventor of the patent or, in the case of a patent filed by and awarded to an assignee of the original inventor or joint inventor, is the original assignee; or

(b) An institution of higher education or a technology transfer organization whose primary purpose is to facilitate the commercialization of technologies developed by an institution of higher education that is owned by or affiliated with an institution of higher education; and
(6) The person demonstrated good faith business practices in previous efforts to enforce the patent or a substantially similar patent or successfully enforced the patent or a substantially similar patent through litigation.

14 M.R.S. § 8701(3)(B).

In the current case, after reviewing the factors set out by the legislature, the Court finds that Copan's patent infringement assertions were not made in bad faith. Looking to the factors in order, the Court first reviews the factors that could indicate bad faith. Copan's letters to GE Healthcare and the French Gendarmerie included the patent numbers for the three patents that Copan believed Puritan was infringing, Copan's name and address, and specific factual allegations of concerning the potential patent infringement. Supp. S.M.F. ¶ 38; *see* 14 M.R.S. § 8701(3)(A)(1).[1] Copan has provided evidence to support its assertion that Copan conducted investigation and analysis comparing the patent to Puritan's product prior to sending the demand letter. Supp. S.M.F. ¶¶ 20-23, 39; *see* 14 M.R.S. § 8701(3)(A)(3). Copan did not demand payment of a license fee or response within an unreasonably short period of time. *See* 14 M.R.S. § 8701(3)(A)(4). In fact, the parties agree that at no point has Copan demanded a licensing fee. Supp. S.M.F. ¶ 41. Therefore, there was also no evidence submitted that the Copan offered to license the patent for an amount that is not based on a reasonable estimate of the value of the license. *See* 14 M.R.S. § 8701(3)(A)(5). While the parties dispute whether the Copan "knew or should have known that the assertion of patent infringement

---

[1] Because this information was included in the letters from Copan to GE Healthcare and the French Gendarmerie, there is no reason for the Court to consider factor 14 M.R.S. § 8701(3)(A)(2) which speaks to a situation in which the factor (1) information was not included in the letter.

8

is meritless" and whether the assertion of patent infringement is deceptive, the Court finds that there is no evidence in the record supporting findings that the claim lacks merit or that the assertion was deceptive. *See* 14 M.R.S. § 8701(3)(A)(6-7). Finally, Copan's prior and subsequent letters concerning patent infringement all contain the information listed in factor (1) and the German court did not find that Copan's prior patent infringement action against Puritan lacked merit. *See* 14 M.R.S. § 8701(3)(A)(8). The Court finds that none of the factors tending to show bad faith assertion of patent infringement can be found in Copan's actions.

Furthermore, the Court finds that many of the factors tending to show that an assertion of patent infringement was not made in bad faith can be found in Copan's actions. *See* 14 M.R.S. § 8701(3)(B). Copan's letters to GE Healthcare and the French Gendarmerie included all of the information required by 14 M.R.S. § 8701(3)(A)(1). Supp. S.M.F. ¶ 38; *see* 14 M.R.S. § 8701(3)(B)(1). Copan has provided evidence that prior to contacting Puritan it made a good faith effort to establish that Puritan infringed upon the patent and that Copan made a good faith effort to negotiate an appropriate remedy. Supp. S.M.F. ¶¶ 20-23, 26-31, 39; *see* 14 M.R.S. § 8701(3)(B)(3). Copan has been producing electrostatically flocked swabs for thirteen years. Supp S.M.F. ¶¶ 3-11. Copan employs over 450 people and maintains facilities in three countries. Supp. S.M.F. ¶ 8. The Court finds that Copan has made a substantial investment in the use of the patent, production, and sale of the flocked swabs covered by the patent. *See* 14 M.R.S. § 8701(3)(B)(4). After review of the factors laid out in the statute, it is clear to the Court

9

that Copan did not act in bad faith when asserting patent infringement by Puritan. [2]

Because Puritan has not made out the element of bad faith on the part of Copan, the Court

grants Copan's motion for summary judgment.

    III.    Conclusion:

        The ORDER shall be:

        Defendant's Motion for Summary Judgment is GRANTED. Judgment shall

        enter against Plaintiff and in favor of Defendant on Plaintiff's Complaint.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference.

Dated:  April 27, 2017

Richard Mulhern
Judge, Business and Consumer Docket

---

[2] The Court further notes that the intent of the legislature when enacting 14 M.R.S. § 8701, as found through a reading of the plain language of the statute, was not to restrict the ability of patent holders actively producing the item covered by the patent from asserting infringement. Instead, the legislature intended to prohibit abusive patent litigation, used as a form of blackmail, brought by patent holders and/or those who claim to be patent holders but have made no material investment in the patented product. The current dispute is between two parties actively producing flocked swabs and concerns the details of the patents themselves. This case is not appropriately brought pursuant to 14 M.R.S. § 8701.

Entered on the Docket: 4/27/17
Copies sent via Mail___ Electronically ✓